BRYSON v. GALLO.

(Circuit Court of Appeals, Sixth Circuit. June 7, 1910.)

No. 2,022.

1. MASTER AND SERVANT (§ 264*)—INJURY TO SERVANT—EVIDENCE ADMISSIBLE UNDER PLEADINGS—SUFFICIENCY OF ALLEGATIONS.

Where plaintiff was injured while working as an employé in the basement of a building under construction by defendant as contractor by the slipping and falling upon him of steel beams, three of which were being lowered into the basement at once by means of a derrick, an allegation in his petition "that the tools and appliances then and there owned and used by the defendants were inadequate to lift more than one beam at a time," together with a further allegation of negligence in attempting to

lift the beams by fastening them merely by a single loop near the center, were sufficient to authorize the admission of evidence of the failure of defendant to furnish guide lines to steady the beams, shown to be a proper and usual appliance, under Rev. St. Ohio 1908, § 5096, which provides that the allegations of a pleading shall be liberally construed with a view to substantial justice between the parties.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. § 264.*]

2. Courts (§ 359*)—State Laws—Construction in Federal Courts—Conformity Statute.

Under the federal conformity statute (Rev. St. § 914 [U. S. Comp. St. 1901, p. 684]), which provides that the pleadings in actions at law in the federal courts shall conform as near as may be to those in the state courts, the federal courts may look to the state statutes upon the question of the construction of pleadings in such actions.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 359.*

Conformity of practice in common-law actions to that of state courts, see notes to O'Connell v. Reed, 5 C. C. A. 594; Nederland Life Ins. Co. v. Hall, 27 C. C. A. 392.]

3. Pleading (§ 430*)—Variance—Statutory Provisions.

Under Rev. St. Ohio 1908, § 5294, which provides that no variance shall be deemed material unless it has actually misled the adverse party to his prejudice, and that when it is alleged that a party has been so misled the fact must be proved to the satisfaction of the court, which may then permit an amendment of the pleading, there cannot be a fatal variance where there was no claim of being misled by the adverse party when the evidence was offered, but it was met by counter evidence.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. § 1438; Dec. Dig. § 430.*]

4. Master and Servant (§§ 285, 286*)—Action for Injury to Servant—Questions for Jury.

Evidence, in an action by a servant against the master to recover for a personal injury, *held* such as to render it proper to submit to the jury the questions of defendant's negligence, and whether such negligence caused the injury by rendering unsafe the place where plaintiff worked.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 285, 286.*]

5. Master and Servant (§ 201*)—Master's Liability for Injury to Servant—Concurring Negligence of Fellow Servants.

If the failure of the master to provide and maintain a safe place to work contributed to the servant's injury, he is liable for such injury, notwithstanding the concurring negligence of fellow servants.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 515–534; Dec. Dig. § 201.*

Concurrent negligence of master and fellow servant, see note to Maupin v. Texas & P. Ry. Co., 40 C. C. A. 236.]

6. Words and Phrases—"Inadequate."

The word "inadequate," as applied to appliances, may signify insufficiency or lack of "appliances."

7. Words and Phrases—"Snub Ropes."

Guide lines used to steady beams in their descent from a derrick platform are called "snub ropes."

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by Gaetano Gallo against Thomas B. Bryson. Judgment for plaintiff, and defendant brings error. Affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This action was begun in the common pleas court of Cuyahoga county, Ohio, by Gaetano Gallo against the Tidewater Building Company and Thomas B. Bryson, to recover damages in the sum of $20,000 for personal injuries alleged to have been suffered by Gallo while in the employ of defendants and through their negligence. The building company is a corporation organized under the laws of New York, and Bryson is a citizen and resident of that state. The case was removed to the court below on the ground of diversity of citizenship, and was tried on the petition filed in the state court and separate answers and a reply filed in the trial court. At the close of the plaintiff's evidence a motion to direct a verdict in favor of the building company was granted, and a like motion by Bryson was denied. A verdict for $5,000 and judgment thereon were rendered against Bryson. The case is pending here on proceedings in error.

Bryson, a contractor, was engaged in constructing a building in Cleveland, and Gallo, a laborer in the employ of Bryson, was engaged in mixing and wheeling concrete within the building as far as it had progressed, at the time of the injury. The building was about 200 feet square and fronted on two streets. A platform with a derrick upon it was maintained on one side of this building at the level of one of the streets as a place and means for receiving materials and then lowering them into the cellar and basement. Gallo's work was in the basement, and the place provided for mixing concrete was directly under this platform. The accident was caused by the fall of material from the derrick. It was attempted to lower three steel beams at one time, each weighing about 700 pounds, by fastening the derrick chain around them at their center, when they slipped from their fastening and so injured Gallo as to require amputation of one of his hands.

The plan of conducting the work involved a division of it into three parts, to wit, iron work, carpenter work, and unskilled labor. One Eldridge was the superintendent and in control of all the men and work. He had an assistant, named Lowery. The iron work was under the immediate charge of a foreman named Schmunk; and under him was an iron worker named Keith, who fastened the chain to the three beams which fell and injured Gallo. The carpenters were under the control of another foreman, and the unskilled laborers like Gallo were under control of still another foreman, named Stevenson; but neither of the last-mentioned foremen seems to have been immediately concerned with the lowering of steel beams.

W. B. Stewart, for plaintiff in error.

H. F. Payer, for defendant in error.

Before SEVERENS, WARRINGTON, and KNAPPEN, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). Although there are quite a number of assignments of error, the controversy is reducible to two issues. One arises upon a claim that the accident was caused by admitted negligence of certain fellow servants of Gallo who were engaged at the derrick in giving orders for lowering and in handling the three steel beams. The other grows out of the receiving of evidence, and of a portion of the charge of the court below, touching a claim that Bryson failed to furnish appliances necessary to steady the beams as they were lowered and so failed to furnish Gallo a safe place in which to work. Stating these issues in other language: They concern the violation of primary duties, first, by Gallo's fellow servants, and, second, by Gallo's employer, Bryson.

The admitted negligence is claimed on behalf of Bryson to have grown out of an order given by Schmunk as foreman of the iron workers to Keith as an iron worker under him, to lower at one time the three beams in question instead of one at a time as previously di-

rected by Superintendent Eldridge. One complaint is that the court below erroneously submitted to the jury the question of negligent operation of proper appliances by fellow servants of Gallo. But we think the charge was in favor of Bryson upon this feature. As illustrative of this, we may refer to the following portion:

"Nor does the fact that a person is hurt, or the fact that the plaintiff was hurt, and his injury was due to the fact that somebody who was working there, like Keith or the other associates of his, was negligent—was not exercising ordinary care—make the defendant liable. The negligence of some fellow workman of the plaintiff, resulting in injury to the plaintiff, would not, in and of itself, or because of that fact alone, make the employer liable."

This was emphasized by a statement shortly following it:

" * * * And so the plaintiff must show by a preponderance of the proof, before he can recover, that it was the defendant's negligence which was responsible for the falling of the beams."

We may therefore safely pass by the question of fellow service or of liability in that regard, and turn to a consideration of the important question touching the claim of failure of the master to furnish necessary appliances. The claim of Gallo is that there was a failure to furnish guide lines called "snub ropes," to steady the beams in their descent from the derrick platform to the floor of the basement. The objection of Bryson is that no such failure was alleged in the petition. Keith was permitted to testify that there was no "guide line or snub line there" for him to use, when attempting to lower the three beams, and defendant's counsel at the time objected "on the ground that it is not covered by the petition; there is no allegation against us for failure to have such." It must be conceded that the petition does not in express terms contain such an allegation. It does contain many allegations of specific negligence; and one inquiry is whether any of them separately, or in connection with others, may fairly be regarded as broad enough to justify admission of this evidence. Among the allegations are the following:

" * * * They (defendants and their superior agents and servants) were careless and negligent in undertaking to lift by means of said derrick at one time three metal beams of such great weight and size, and the plaintiff says that the tools and appliances then and there owned and used by the defendants were inadequate to lift more than one beam at a time. They were further careless and negligent in this, to wit, that they just prior to attempting to lift said beams had recklessly fastened and secured the same merely by a single loop over and around said beams and near the center thereof, instead of securing and fastening the same by at least two loops near the ends thereof, so as to secure and insure a proper balancing of said beams when the same would be lifted in the air."

Again:

" * * * In failing to apprise him of their purpose then and there to elevate said beams in the air in the manner and under the conditions aforesaid, and in failing to provide for him a safe place in which to work."

These allegations, as well as the others, were traversed in the answer by simple denial. What is the true scope and meaning of the words "that the tools and appliances then and there owned and used by the defendants were inadequate to lift more than one beam at a time"? It was nowhere alleged that the derrick or its depending

cable, chains, or appliances were broken by the weight of the beams or otherwise. It is within the ordinary and accepted meaning of the word "inadequate," as used in the allegation, that it may signify insufficiency or lack of "appliances." True the word is followed by the words "to lift more than one beam at a time"; but these words must be read in connection with other allegations such as the succeeding language, in which it is charged that it was attempted "to lift said beams" by fastening them merely by a single loop near the center instead of fastening them "by at least two loops near the ends thereof so as to secure and insure a proper balancing of said beams when the same would be lifted in the air." The complaint therefore was not of inherent weakness in appliances, but rather of an insufficiency of appliances for balancing the beams when it was attempted to lift two or more at one time from the derrick platform and to lower them to the basement. If this meaning or its equivalent is not applied, it is hard to conceive of any purpose at all in using "inadequate." Enough appears in the evidence to show that a guide line or snub line was a proper and usual appliance for staying and balancing beams when so carried.

It is not meant to say either that the language quoted or that the language of the petition as a whole is as clear as it should have been respecting averment of violation of the primary duty of the master. But the present petition was prepared under the Ohio Code of Civil Procedure and was filed in an Ohio court. Under section 914, Rev. St. U. S. (1 U. S. Comp. St. 1901, p. 684), the practice and pleadings in a case like this are required to conform "as near as may be" to the practice and pleadings, etc., prescribed in the state within which the federal court is held. We may therefore upon such a question as this look to the Civil Code of Ohio to ascertain how such a pleading should be construed. Glenn v. Sumner, 132 U. S. 152, 156, 10 Sup. Ct. 41, 33 L. Ed. 301; Roberts v. Lewis, 144 U. S. 653, 656, 12 Sup. Ct. 781, 36 L. Ed. 579; Nudd et al. v. Burrows, 91 U. S. 426, 442, 23 L. Ed. 286. No question arises here like that in Liverpool & L. G. Ins. Co. v. N. & M. Friedman, 133 Fed. (6th Circuit) 713, 716, 66 C. C. A. 543. By section 5096 of that code it is provided that:

"The allegations of a pleading shall be liberally construed, with a view to substantial justice between the parties."

See, also, section 4948; Clay v. Edgerton, 19 Ohio St. 549, 2 Am. Rep. 422; McCurdy v. Baughman, 43 Ohio St. 78, 1 N. E. 93.

Construing the language of the petition liberally "with a view to substantial justice between the parties," we are not persuaded that the trial court committed error of a prejudicial character in admitting the evidence in question.

But we need not rest this conclusion merely upon the language of the petition. It is to be observed that the defendant at no time presented a motion to make the petition definite and certain. The objection that there was nothing in the petition to suggest that the claim in dispute would be made, or that evidence would be offered in its support, is not convincing. Defendant did not in the objection as made or elsewhere claim to be taken by surprise, or in any manner to be misled by the introduction of such evidence. On the contrary,

he met the claim by testimony and tried the case to its end apparently with as much preparation as if specific issue had been made in that regard by the pleadings. It is earnestly insisted, however, that fatal variance intervened.

Presumably plaintiff would have been allowed to amend his petition, if amendment had been suggested by counsel and deemed necessary by the court. As observed by Judge Severens in Hernan v. American Bridge Co., 167 Fed. (6th Circuit) 930, 936, 93 C. C. A. 330, 336:

"The authority vested in the federal courts to amend the process, pleadings, and proceedings in cases brought before them is ample; probably not less so than in any other system of jurisprudence."

Recurring to the Ohio Code of Civil Procedure respecting questions of pleading and amendment, by section 5294 it is provided:

"No variance between the allegation in a pleading, and the proof, shall be deemed material, unless it has actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits, and when it is alleged that a party has been so misled, that fact must be proved to the satisfaction of the court, and it must also be shown in what respect he has been misled; and thereupon the court may order the pleading to be amended, upon such terms as are just."

Section 5295 provides:

"When the variance is not material, the court may direct the fact to be found according to the evidence, and may order an immediate amendment, without costs."

It follows that, whether amendment was necessary or not, at most there was not under the facts pointed out a material variance. Railway Co. v. Lavalley, 36 Ohio St. 221, 225; Sibila v. Bahney, 34 Ohio St. 399, 408; Benninger v. Hess, 41 Ohio St. 64, 68; Cincinnati St. Ry. Co. v. Whitcomb, 66 Fed. (C. C. A., 6th Circuit) 915, 14 C. C. A. 183; Derham v. Donohue, 155 Fed. (C. C. A., 8th Circuit) 385, 386, 83 C. C. A. 657; Washington & Georgetown R. v. Hickey, 166 U. S 521, 531, 532, 17 Sup. Ct. 661, 41 L. Ed. 1101; Baltimore & Potomac R. v. Cumberland, 176 U. S. 232, 238, 20 Sup. Ct. 380, 44 L. Ed. 447.

Furthermore, in view of what has been shown, it is not perceivable why section 5115 of the Ohio Civil Code is not applicable. It provides:

"The court, in every stage of an action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed, or affected, by reason of such error or defect."

We therefore conclude that we should consider this case as though admittedly an issue had been distinctly formulated by the pleadings alleging and denying failure of the master to supply the necessary guide lines, or "snub ropes," as they are called, for use in staying and balancing the beams. It is not necessary to set out and analyze the evidence introduced upon this subject. It is enough to say that our study of the record satisfies us that there was conflict in the testimony and that the jury was fairly and clearly instructed upon the subject. Said the learned trial judge:

"So we have the questions: Did the failure of the men to attach these ropes cause the accident? Was it on account of the absence of the ropes that the injury to the plaintiff resulted? Was there at the time available for the use of Keith and his associates rope of sufficient quantity to be used for such snub line or guide line, or both, according as one or both were necessary under the conditions then existing? Did Keith make a suitable search or suitable inquiry for such rope, under all the circumstances? Ought he to have made a further search than he did make? Ought he or his associate, Schmunk, to have inquired of Eldridge, the superintendent? Did they do what, under all the circumstances of the situation that surrounded them—the danger, if any, that they might reasonably apprehend from the use of these instrumentalities in that way to lower these beams—they ought to have done as men of ordinary prudence to satisfy themselves that there was no rope available for use on these beams? If they did and found no such rope, and the failure to find it and use it was the cause of the accident, then the plaintiff is entitled to recover."

The fellow-servant doctrine and the great number of decisions cited in that behalf by the learned counsel for defendant below thus become irrelevant. We believe upon the facts that this case must be ruled by the principles affirmed in the decision of the Supreme Court in Kreigh v. Westinghouse & Co., 214 U. S. 249, 257, 29 Sup. Ct. 619, 622, 53 L. Ed. 984. No question of contributory negligence is presented; and under the verdict and judgment we must assume that Bryson failed to discharge his primary duty to furnish sufficient appliances properly to manipulate the beams during their descent to the basement, and that he failed to provide for Gallo a safe place in which to work as alleged in his petition. This negligence is not affected by the circumstance that those engaged at the derrick and with the beams were also negligent in performing the work. As said by Mr. Justice Day in the case just cited:

"If the negligence of the master in failing to provide and maintain a safe place to work contributed to the injury received by the plaintiff, the master would be liable, notwithstanding the concurring negligence of those performing the work. Grand Trunk R. R. Co. v. Cummings, 106 U. S. 700 [1 Sup. Ct. 493, 27 L. Ed. 266]; Deserant v. Cerillos Coal Railroad Co., 178 U. S. 409, 420 [20 Sup. Ct. 967, 44 L. Ed. 1127], and cases there cited."

The assignments of error must be overruled, and the judgment affirmed, with costs.