### PENNSYLVANIA R. CO. v. LA RUE.

#### (Circuit Court of Appeals, Third Circuit. June 4, 1897.)

#### No. 7, March Term, 1897.

MASTER AND SERVANT—NEGLIGENCE—SAFE APPLIANCES—LUMBER CARS.

A railroad company transporting lumber on low-sided gondola cars owes to its employés a personal duty to provide such cars with strong and safe side standards; and, if it delegates this duty to an employé, it is liable for his negligence, resulting in injury to another employé, though it furnished him with proper standards.

Dallas, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the District of New Jersey.

This was an action at law by Augustus H. La Rue against the Pennsylvania Railroad Company to recover damages for personal injuries. At the trial the defendant requested the court to direct a verdict in its favor, and also requested certain instructions, which were denied. The jury returned a verdict for plaintiff, and judgment was entered accordingly. The defendant then brought the case to this court on writ of error.

Alan H. Strong, for plaintiff in error.
J. Lefferts Conrad, for defendant in error.

Before ACHESON and DALLAS, Circuit Judges, and BUFFING-TON, District Judge.

ACHESON, Circuit Judge. A careful examination of this record has convinced us that the refusal of the court below to direct a verdict for the defendant on the grounds urged in the first and fourth points presented in the brief of the plaintiff in error was right. There was, we think, abundant competent evidence to show that the accident here in question was occasioned by the car which was afterwards seen at the Barrowpit siding, and that that was the same car mentioned by the Harrisburg witnesses. We are also of the opinion that there was sufficient evidence from which the jury might well conclude that the injury which the plaintiff sustained was caused by negligence in the failure to substitute an oak standard for the hemlock standard, the breaking of which brought about the disaster. There was here no such inference to be drawn from the evidence, as matter of law, as would have justified the court in taking the case from the jury. Railway Co. v. Cox, 145 U. S. 593, 606, 12

Sup. Ct. 905; Railroad Co. v. Mackey, 157 U. S. 72, 83, 15 Sup. Ct. 491.

The following stated facts, we think, are fairly deducible from the evidence: On the evening of October 5, 1895, after dark, Augustus H. La Rue, the plaintiff below, then a fireman in the employ of the defendant, the Pennsylvania Railroad Company, while in discharge of his duty upon a locomotive engine of the defendant running westwardly, near Metuchen, N. J., and when in the act of shoveling coal into the fire box, was struck on the head and seriously injured, and at the same time part of the cab of the engine was carried away. At the time of the accident a freight train of the defendant was running eastwardly upon the track next to the track upon which the plaintiff's train was running. There was in the freight train a low-sided gondola car, loaded with lumber (flooring boards), which, in consequence of the breaking of one of the uprights or standards with which the sides of the car were equipped for holding the lumber in place, became loosened so as to project over and beyond the side of the car; and the projecting lumber raked the side of the cab of the plaintiff's engine, and struck the plaintiff. The standard that broke and caused the accident was a defective hemlock standard at the forward end of the lumber car on the side next to the plaintiff's engine. This car had been loaded at Williamsport, Pa., and was bound for Jersey City via Harrisburg. When the car reached Harrisburg a hemlock standard on the forward end of the car was found to be broken, and in consequence the load had shifted out of place, and the lumber was projecting over the side of the car. The defendant's general car inspector at that point sent the car into the defendant's repair yard, where there was a supply of oak standards for the equipment of lumber cars. All the standards on this particular car when it reached Harrisburg were of hemlock. The defendant's foreman of car repairs (Charles Moyer) took out the broken hemlock standard, and replaced it with an oak standard, and he substituted an oak standard for the other forward hemlock one. He also took out several other hemlock standards, substituting therefor oak standards. At the other extreme end of the car,—which had been the rear end on the trip from Williamsport,—he let the hemlock standards remain. In explaining what he did, Moyer testified that when such a loaded lumber car is under way the principal strain comes on the forward end. Either when this car was put back into the train at Harrisburg, or afterwards, and before the accident, the position of the car in the train was reversed, so that the two end hemlock standards were subjected to the principal strain. This reversal of the car in the course of transportation, whereby the weaker end became subject to the greater strain, was a thing that might very readily occur, and ought to have been foreseen. At Harrisburg, before the car was taken out of the repair yard, the projecting lumber was properly replaced in the car. The defendant requested the court to charge the jury thus:

"(1) If the plaintiff was injured by the improper equipment of the car spoken of by Moyer, owing to his not having replaced all of the hemlock stakes, and if he had been furnished with, and then had, proper stakes for that purpose, the defendant is not responsible therefor."

The court declined so to charge the jury, and, to the contrary, charged that, if Moyer was negligent in that matter, the defendant was answerable for his negligence. We are now to determine whether the refusal of the court to affirm the above proposition, and the instruction thus given to the jury, were correct. Now, undoubtedly, it is authoritatively settled by decisions of the supreme court of the United States that, as a general rule, those entering into the service of a common master become thereby engaged in a common service, and are fellow servants, and that the common master is not liable for the negligence of one of his servants which has resulted in an injury to a fellow servant. Railroad Co. v. Baugh, 149 U. S. 368, 13 Sup. Ct. 914; Railroad Co. v. Hambly, 154 U. S. 349, 14 Sup. Ct. 983; Railroad Co. v. Peterson, 162 U. S. 346, 16 Sup. Ct. 843. But it is the equally well established doctrine of that court that it is the personal duty of the master to provide his servant with a reasonably safe place to work in, and to furnish reasonably safe tools, machinery, and appliances for the security of the servant while in the performance of his appointed work. Hough v. Railway Co., 100 U. S. 213. Thus, in Railroad Co. v. Baugh, 149 U. S. 386, 13 Sup. Ct. 921, the court said:

"A master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work or by which he is to be surrounded, shall be reasonably safe. * * * He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of the obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to insure safety in these respects."

So, also, in Railroad Co. v. Peterson, 162 U. S. 353, 16 Sup. Ct. 845, the court, speaking of the positive duties which the master owes to the servant, declared:

"He owes the duty to provide such servant with a reasonably safe place to work in, having reference to the character of the employment in which the servant is engaged. He also owes the duty of providing reasonably safe tools, appliances, and machinery for the accomplishment of the work necessary to be done. * * * If the master be neglectful in any of these matters, it is a neglect of a duty which he personally owes to his employés; and, if the employé suffer damage on account thereof, the master is liable. If, instead of personally performing these obligations, the master engage another to do them for him, he is liable for the neglect of that other, which in such case is not the neglect of a fellow servant, no matter what his position as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

Which of the two above-stated principles is controlling here? Are we to apply to the facts of the plaintiff's case the rule of nonliability of the master for the negligence of a co-employé, or the rule of the master's responsibility growing out of a positive duty, the nonfulfillment of which cannot be excused by his delegation of its performance to another? It will be perceived that the above-quoted proposition submitted by the defendant assumed the standards to be part of the "equipment" of the car. The court below in its charge designated them as "appliances," and submitted to the jury, as decisive

of the controversy, the question whether there was any negligent failure to equip the car with reasonably safe standards for the secure conveyance of its load of lumber. Herein we think the court was right. In the case of a low-sided gondola car employed in the transportation of lumber, side standards to keep the load in place, whether such standards are for constant use, and permanently attached to the car by chains, or are unattached and intended for use on a single occasion, are appliances necessary for the proper equipment of the car, and as essential to the safe transportation of the load as is a proper car body. These side standards, to all intents and purposes, are part of the car. Such views were expressed by the court of appeals of the state of New York in the case of Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407. There a brakeman on a lumber car by the breaking of a defective stake was thrown with the lumber from the car and was injured, and it was held that the stakes were necessary appliances forming part of the car, and that the railroad company was chargeable with negligence in failing to exercise due care that suitable and proper ones were furnished, even although, in accordance with its practice, the stakes had been supplied by the shipper of the lumber to whom the car had been delivered for the transportation of lumber. That ruling was not modified nor its force abated by the later decisions of the same court in Byrnes v. Railroad Co., 113 N. Y. 251, 21 N. E. 50, and Ford v. Railway Co., 117 N. Y. 638, 22 N. E. 946. In each of the last-cited cases the fault was not at all in the character of the car or its appliances, but wholly in the negligent loading of the car by the railroad company's employés. In the present case the negligence which caused the mischief was not the improper or insecure loading of the car, for in this regard there was no fault. Nor was this a case of the negligent use by the defendant's employés of safe appliances. The ground of complaint here is that the defendant failed in the positive duty it owed to the plaintiff to equip the car with reasonably safe appliances for the service in which it was employed. It is no answer to the complaint of the plaintiff, who has suffered a grievous injury from defective appliances, to say that the defendant had provided at its repair yard proper standards. Its whole duty to the plaintiff was not fulfilled, short of the actual proper equipment of the car. The negligence of the person to whom the defendant delegated the performance of this duty was the defendant's negligence. We discover no error in the rulings of the court below, and therefore the judgment is affirmed.

DALLAS, Circuit Judge (dissenting). I dissent from the judgment in this case, because, in my opinion, the rule which should be applied in its decision is that of nonliability of the master for the negligence of a fellow servant, and not that which holds the master responsible for defects in appliances furnished by him to the servant. The railroad company provided a proper car for the transportation of the lumber. It required no repair, and was not repaired. Standards were needful, and fit ones were supplied. The failure to use these appliances to the extent to which they should have been used

was the omission of the co-employé who ought to have so used them. The company discharged its duty by supplying them of the right kind and in sufficient quantity, and by making proper provision for their use.