THE KANSAS CITY CAR AND FOUNDRY COMPANY v. REUBEN W. SAWYER.

No. 434.

DUTY OF MASTER— *Vice-Principal— Fellow Servant.* It is the duty of a master to furnish his employees with a reasonably safe place in which to work, and if he delegates to another the duty of selecting material, or the building of a scaffold, such delegated person becomes a vice-principal, for whose acts he is responsible. A servant to whom the master entrusts the duty of selecting appliances for other servants to work with, is not their fellow servant so as to prevent liability of the master to them for injuries caused by the servant's negligence in performing that duty.

Error from Wyandotte district court; HENRY L. ALDEN, judge. Opinion filed May 4, 1898. Affirmed.

*Warner, Dean, Gibson & McLeod*, and *Miller & Morris*, for plaintiff in error.

*John A. Hale*, and *J. O. Fife*, for defendant in error.

The opinion of the court was delivered by

McELROY, J. : This action was brought by Reuben W. Sawyer, defendant in error, against the Kansas City Car and Foundry Company, plaintiff in error, to recover for personal injuries received by him, resulting from the alleged negligence and carelessness of the company.

The plaintiff alleged, in substance, that on September 13, 1894, he was in the employ of the foundry company as a carpenter, under the direction of one John Girard as boss carpenter; that at the time of receiving the injuries Girard ordered him to perform certain work which was under the immediate supervision and control of one Warnick, an employee of the defendant company; that in performing the work which he was directed to do, upon a scaffold about sixteen feet high, the brace by which the scaffold was held up broke and precipitated him to the ground, whereby he received great injury; that the brace which held up the scaffold was insufficient in strength, and had a large crack and knot therein, which rendered it insufficient to bear up the burden placed thereon and caused it to break; that the scaffold was erected by the defendant company, and that its condition was unknown to the plaintiff, but was well known to the defendant, or by the exercise of ordinary care could have been known and remedied by the defendant; that

the plaintiff had no opportunity to examine the brace, but relied upon the statement of the defendant that he was to obey the orders of Girard and Warnick; that the plaintiff, obeying orders, and in the discharge of his duties, climbed upon the scaffold, and the brace broke because of its condition and precipitated the plaintiff to the ground, by which his leg, foot, ankle, knee, hip, back, shoulders and breast were bruised, mangled, and wrenched, thereby causing him to suffer great mental and physical pain and to become a cripple for life.

The defendant's answer was (1) a general denial; (2) an allegation of contributory negligence. The reply was a general denial. A trial was had before the court and jury upon the issues thus formed. The defendant interposed a demurrer to the plaintiff's evidence, which was overruled, the defendant excepting. The jury found for the plaintiff and assessed his damages at $1200. A motion for new trial was filed and overruled, and the case is presented to this court for review.

Complaint is made, first, that the verdict is not sustained by sufficient evidence and is contrary to law. The plaintiff in error submits and argues these propositions, with many authorities to support the same:

"1. Where a master engaged in the erection of a building furnishes materials for the construction of necssary scaffolds used in the work, which materials are in a pile of materials of various kinds, some of which are suitable and others not suitable for such use, and the selection of the materials to be used in the scaffold is left to the men engaged in constructing the building, is the master liable for an injury to one of the men engaged as carpenter upon the building being erected, where some one of his colaborers or fellow servants, in making a selection of a piece of timber, se-

lects a defective one, which, when placed in a scaffold, breaks, and causes the injury complained of ?

" 2. Has not a master who is constructing a building, where in the process of construction it is necessary to have scaffolds upon which the carpenters are to work, discharged his full duty to such employees when he has furnished sufficient suitable materials from which proper timber might be selected for such purpose, and has left the construction of the scaffold to the men engaged in the work ? "

These propositions do not fairly present the case. They assume facts which are not proven, and assume that all the principal disputed facts were found by the jury for the plaintiff in error. These propositions are substantially correct, but they are not applicable to this case, and therefore the authorities cited are not applicable. The record shows that on September 13, 1894, Sawyer, while in the employ of the defendant company, was injured by the falling of a scaffold on which he was working. John Girard was the carpenter foreman. He had charge of the carpenter work in building the defendant's plant, and had under his immediate charge about 150 men.

On September 12, 1894, while Sawyer was working upon a similar scaffold in another portion of the grounds, Girard discharged him, and afterwards told him to report in the morning and he would give him work. When Sawyer reported on the morning of the 13th he was directed by Girard personally what to do and where to work. There was some dispute as to what directions were given to Sawyer, but no dispute as to the fact that Girard gave him specific directions concerning his work for the day. The immediate crew with which Sawyer was working consisted of himself, Arnett, Warnick, and Williams, all carpenters, and Charles Chase, a laborer. The scaf-

fold consisted of braces, brackets, and planks. It does
not appear when or where the brackets were con-
structed. There is some evidence tending to show
that they were shipped from Birmingham, Mo. The
braces for the scaffold were taken from a pile of culled
lumber, oak and maple, near the work, some of which
was suitable for braces and some not. The defect in
the construction of the scaffold was a weak, cracked,
knotty, cross-grained brace, which was insufficient to
hold up the burden that was necessarily placed upon it.

It appears that, two or three days before the acci-
dent occurred, Chase, at the request of Girard, went to
this pile of lumber and selected other timbers to put
in the place of the old braces then in use, and that he
made the selection of the brace which broke. Chase
did not look. to see whether the timbers selected by
him for braces were cracked, cross-grained, or knotty ;
however, he did see cracks in the timber that broke.
The scaffold was constructed under the direction of
Girard, the foreman, in such manner that it could be
easily taken apart, removed, and joined together.
Sawyer certainly had nothing to do with constructing
the brackets, selecting the plank, or selecting timbers
for braces ; these were all under the direction of the
foreman. The scaffold was constructed and a portion
of it, at least, was in place when Sawyer was directed
to that place for work on the morning of the 13th.
Some of the men who constructed the scaffold testi-
fied that it was sufficient to hold two persons, but
was not intended to hold the weight which was after-
wards placed upon it. The laborer who selected the
timbers for braces was certainly not the most compe-
tent person for that purpose. He did not examine
the lumber for the purpose of ascertaining whether it
was straight or cross-grained, or whether it had knots

or cracks ; and yet, when some of these defects were discovered, he selected it and permitted it to be used without making known the defects discovered.

It was the duty of the foundry company to furnish Sawyer with a reasonably safe place in which to work, and if it delegated to another the duty of selecting material or the building of a scaffold, such delegated person became a vice-principal, for whose acts it is responsible.

A servant to whom the master entrusts the duty of selecting appliances for other servants to work with is not their fellow servant, so as to prevent liability of the master to them for injuries caused by the servant's negligence in performing that duty. (*A. T. & S. F. Rld. Co. v. Holt*, 29 Kan. 149 ; *A. T. & S. F. Rld. Co. v. Moore*, 29 id. 632 ; *K. C. Ft. S. & G. Rld. Co. v. Kier*, 41 id. 661, 21 Pac. Rep. 770 ; *Kelley v. Ryus*, 48 id. 120, 29 Pac. Rep. 144.)

A careful examination of the record satisfies us that the verdict is supported by the evidence and is not contrary to law. The plaintiff, Sawyer, was badly injured in the fall, and we are unable to find any evidence of his negligence which in any manner contributed to the injury received. Neither Sawyer nor his colaborers selected the defective timber. It was selected by Chase at the request of the company's foreman.

We are unable to discover any reversible error in giving or refusing instructions. The motion for a new trial was properly overruled.

The judgment will be affirmed.