PORT BLAKELY MILL CO. v. GARRETT et al.

(Circuit Court of Appeals, Ninth Circuit. October 2, 1899.)

No. 532.

MASTER AND SERVANT—DUTY TO FURNISH SAFE APPLIANCES—NEGLIGENCE OF CO-SERVANT.

Stakes which fit in sockets on the side of a flat car designed for transportation of lumber are appliances necessary for the proper equipment of the car, and the railroad company is not relieved from liability for personal injuries sustained by an employé by reason of the breaking of such stakes on a loaded car, where they were defective and insufficient in number, by showing that they were made and supplied by a co-servant of the person injured.[1]

In Error to the Circuit Court of the United States for the Northern Division of the District of Washington.

This was an action brought by the widow and two minor children of Hugh Garrett against the Port Blakely Mill Company, under the Code of Procedure of the State of Washington, to recover damages for the death of the said Hugh Garrett. The decedent, just prior to his death, was employed by the Port Blakely Mill Company, plaintiff in error, as a brakeman on its line of railroad in Mason county, in the state of Washington. This railroad extended from tide water, at or near a place known as Kamilchie, into the forest, for a distance of about 38 miles, and was principally used for the purpose of transporting saw logs from the forest to tide water. There were operated on this road the ordinary locomotives, logging trucks, and flat cars, the latter being 30 feet in length and 7 feet and 8 inches in width, and used for various purposes, not infrequently for hauling lumber from tide water to points along the road. Iron sockets were fastened to the sides of these flat cars, into which stakes were placed, when hauling lumber, to retain the lumber in its place on the car. The plaintiff in error employed one Johnson as a car loader, who, at the time of such loading, selected from the lumber yard of the plaintiff in error the material out of which to make the stakes for the sockets on the sides of the car. On the 21st day of July, 1897, a train was made up at the tide-water terminus of the road, composed of a locomotive, 18 empty logging trucks, and 1 flat car loaded with lumber; the flat car being placed directly behind the locomotive and ahead of the logging trucks. The lumber was loaded on the car by Johnson, assisted by his three sons. The train was operated by a conductor, engineer, fireman, the said Hugh Garrett, and three other brakemen. While the train was running around a left-hand curve, certain of the stakes on the right-hand side of the car broke, and lumber was thrown from the flat car to the ground, and under the wheels of the train, causing the logging trucks following to be derailed. As a result, the said Hugh Garrett was thrown from the car on which he was working as a brakeman, and killed.

Evidence was introduced tending to prove that some of the stakes selected by Johnson were defective, and also that Johnson had not used a sufficient number of stakes to insure the safety of the load. There was expert testimony to the effect that stakes of the size and number used would be sufficient to support the amount of lumber hauled on that day, providing the stakes were made from sound, strong timber; and also testimony that the stakes which broke were not sound and strong, but defective and insufficient. The car loader testifies that he made the stakes from the material designated by the plaintiff in error. It was claimed, upon the evidence, that the plaintiff in error was negligent in its duty to the deceased, in providing unsound, unsafe, and insufficient stakes for said lumber car. The defense was urged that the injury, and consequent death, of the said Hugh Garrett, was caused by the negligence, imprudence, and want of care of his fellow servants and co-

---

[1] As to duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.

employés. As against this defense, it was contended, in support of the cause of action, that side stakes were customarily used by persons of ordinary caution and prudence in running loaded lumber cars such as the one operated by the railroad in this case; that such stakes, of the proper character and in the requisite number, were a part of the necessary and usual equipment of a lumber car, to provide which the law required that the persons operating the railroad should make suitable provision and exercise reasonable care; and that this duty cast upon the management of the road could not be delegated to any one, so as to relieve the railroad company from liability for negligence in failing to provide such proper and necessary stakes, where injury to an employé was caused by such failure. The cause was tried before the court and a jury, and resulted in a verdict awarding damages to the plaintiffs (defendants in error) in the sum of $5,000. Motion for a new trial was denied, and the cause is now before this court upon a writ of error.

Preston, Carr & Gilman, for plaintiff in error.
Lindsay, King & Turner, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts, delivered the opinion of the court.

The assignments of error, eight in number, relate to instructions given to the jury to which exceptions were taken by the plaintiff in error, and instructions to the jury requested by the plaintiff in error which the court refused to give. These several assignments of error involve but a single question, which is sufficiently contained in the following instruction that the court gave to the jury, and which plaintiff in error contends was erroneous:

"It was the duty of the defendant in this case to inspect all the cars in that train, including this car upon which the lumber was loaded, and see, before it went out upon a run, that they were in safe condition for operation. And, when I speak of the car upon which the lumber was loaded, it is to be understood as including, not only the platform itself, and the trucks and running gear, but the side stakes which were required to hold the lumber in place, and keep it from shaking off or being toppled off. That obligation is one which the defendant company owed to all of its employés, including Hugh Garrett, and it cannot be relieved from responsibility and liability by showing that, if there was anything wrong about that car, it was negligence of a co-employé of Hugh Garrett. In the matter of seeing that the car was fit for service—that is, in the matter of exercising reasonable care and prudence to have it in fit condition for safe operation—is a duty which the employer owed; and no matter who the employé was, charged by the defendant with that particular duty, any neglect in that regard would be a breach of duty by the defendant company which would create a liability, if in consequence of neglect in that particular an injury resulted."

It is a well-established rule, in the doctrine of master and servant, that it is the duty of the master to provide a reasonably safe place for the servant to work in, and to furnish reasonably safe and adequate appliances or instrumentalities for the servant's use. Under this rule, it became the duty of those charged with the management of the railroad to fit or prepare the lumber car for the use to which it was assigned. But it is urged by plaintiff in error that its duty in this respect was fulfilled in the supplying of proper material for the stakes in question, and that the preparation of the stakes and fitting them to the car was a part of the work the car loader was employed to perform; that, as the car loader was admittedly a fellow

servant of the deceased, any accident or loss resulting from the negligence of the car loader could not be attributed to the plaintiff in error. The objection to this interpretation of the rule is that it limits the duty of the master to the mere act of furnishing suitable material for the construction of a safe place and the supply of adequate appliances, —an interpretation applicable to the relation of employer and employé in the erection of temporary scaffolding and structures of that character in the building of houses, the opening of mines, or the grading of railroads, but inapplicable to the relation of master and servant in the operation of a railroad, where the suitable equipment of a car for a particular service is necessarily the duty of the master. If the act from which an injury arises is one pertaining to the duty which, under the law, the master owes to his servants, he is responsible to them for the manner of its performance, and is not excused from liability to an employé for an injury caused by the negligence of a fellow servant unless he himself has done his full duty. Hough v. Railway Co., 100 U. S. 213, 218; Railroad Co. v. Herbert, 116 U. S. 642, 6 Sup. Ct. 590; Railroad Co. v. Baugh, 149 U. S. 368, 386, 13 Sup. Ct. 914; Railway Co. v. Daniels, 152 U. S. 684, 689, 14 Sup. Ct. 756.

In the case of Railroad Co. v. Baugh, supra, after a careful review of the cases bearing upon this question, the supreme court explained the rule in the following language:

"A master employing a servant impliedly engages with him that the place in which he is to work, and the tools or machinery with which he is to work, or by which he is to be surrounded, shall be reasonably safe. It is the master who is to provide the place and the tools and the machinery, and when he employs one to enter into his service he impliedly says to him that there is no other danger in the place, the tools, and the machinery than such as is obvious and necessary. Of course, some places of work and some kinds of machinery are more dangerous than others; but that is something which inheres in the thing itself, which is a matter of necessity, and cannot be obviated. But, within such limits, the master who provides the place, the tools, and the machinery owes a positive duty to his employé in respect thereto. That positive duty does not go to the extent of a guaranty of safety, but it does require that reasonable precautions be taken to secure safety, and it matters not to the employé by whom that safety is secured, or the reasonable precautions therefor taken. He has a right to look to the master for the discharge of that duty, and if the master, instead of discharging it himself, sees fit to have it attended to by others, that does not change the measure of obligation to the employé, or the latter's right to insist that reasonable precaution shall be taken to secure safety in these respects. Therefore it will be seen that the question turns rather on the character of the act than on the relations of the employés to each other. If the act is one done in the discharge of some positive duty of the master to the servant, then negligence in the act is the negligence of the master; but, if it be not one in the discharge of such positive duty, then there should be some personal wrong on the part of the employer before he is held liable therefor."

In Railroad Co. v. Peterson, 162 U. S. 353, 16 Sup. Ct. 843, the same court, in speaking of the duty of the master to provide reasonably safe tools, appliances, etc., for the accomplishment of the work to be done, said:

"If, instead of personally performing these obligations, the master engages another to do them for him, he is liable for the neglect of that other; which, in such case, is not the neglect of a fellow servant, no matter what his position

as to other matters, but is the neglect of the master to do those things which it is the duty of the master to perform as such."

Applying the principles of these decisions to the facts in the case before us, the conclusion follows that it was the duty of the plaintiff in error to see that the lumber car was in safe condition for operation before it was put into service on the day of the accident, and the delegation of this duty to a fellow servant of the deceased did not relieve the master from liability. This duty required that there should be provided a lumber car in safe condition for service, including side stakes of proper material and sufficient number. The car was not completely equipped for the safe transportation of lumber without them. They take the place of permanent sides or restraining appliances, and are only made detachable to allow the car to be used for other purposes. This very point was in issue in the case of Railroad Co. v. La Rue, 27 C. C. A. 363, 81 Fed. 148, where the court held that, "in the case of a low-sided gondola car employed in the transportation of lumber, side standards to keep the load in place, whether such standards are for constant use, and permanently attached to the car by chains, or are unattached and intended for use on a single occasion, are appliances necessary for the proper equipment of the car, and as essential to the safe transportation of the load as is a proper car body. These side standards, to all intents and purposes, are part of the car,"—citing, to the same effect, Bushby v. Railroad Co., 107 N. Y. 374, 14 N. E. 407. We discover no error in the instructions or in the rulings of the court below. The judgment is therefore affirmed.