## W. F. HENSON, Respondent, v. PASCOLA STAVE COMPANY, Appellant.

**Springfield Court of Appeals, November 16, 1910.**

1. **CONTRIBUTORY NEGLIGENCE: Unloading Logs: Occupying Place on Top of Logs.** Plaintiff got on top of a carload of logs and with a canthook was assisting in unloading the logs, when a side stake broke and the logs rolled off, carrying plaintiff with them and injuring him. The evidence showed that other men occupied the space at the end of the car and that there was no room for plaintiff to help with the canthook unless he got on top, as he did. *Held*, that plaintiff was not guilty of contributory negligence.

2. **FELLOW-SERVANTS: Negligence.** While plaintiff was on top of a car of logs, assisting in unloading, one of the side stakes broke and plaintiff fell with the logs and was injured. It was the duty of the men engaged in getting the logs from the forest to the mill, to cut and prepare the side stakes. *Held*, that if the fall of the logs was due to a defective stake, that this stake had been made by one of the men engaged with plaintiff in the common employment of getting logs from the forest to the mill, all working under the immediate direction of the same foreman, the negligence, if any, was that of a fellow-servant. NIXON, P. J., *dissents*, and in a dissenting opinion holds that the servant in the woods, who made the stake, was not the fellow-servant of the plaintiff, in such a sense as to relieve the master of liability.

3. **MASTER AND SERVANT: Safe Place to Work: Delegation of Duty.** It is the duty of the master to use ordinary care to furnish the servant a reasonably safe place to work, and this duty cannot be delegated.

4. ———: ———: Servant Employed to Prepare Safe Place: Fellow--Servants. If, in the performance of the work, it should be necessary for the servant himself, or a fellow-servant, to prepare a place in which to perform the work, and the master shall use due care to furnish proper material and competent fellow-servants, and a fellow-servant shall select bad material, when good material is also available, and by reason of that act another fellow-servant is injured, the master will not be liable.

5. ———: ———: ———: ———: Unloading Cars: Defective Stakes. While plaintiff was assisting in unloading logs from a car, a side stake broke, the logs fell, and plaintiff was injured. The stake had been prepared and placed in a socket on the car by a fellow-servant in the forest from which the logs were hauled. *Held*, that even if the defective stake be regarded as a part of plaintiff's place to work, that the simple duty of selecting and cutting the stake and fitting it in the socket of the car could be delegated to the servants themselves, and when so prepared by a fellow-servant the master could not be held responsible for its defective condition. NIXON, P. J., *dissents*, and in a dissenting opinion holds that the duty of the master to use ordinary care to furnish a reasonably safe stake could not be delegated to the servant in the forest, so as to relieve the master of liability for injury to the servant engaged in unloading, where the injured servant had nothing to do with cutting or placing the stakes, nor was he employed with an associate in that particular work.

6. INSTRUCTIONS: Master and Servant: Negligence: Duty of Master. An instruction, given on the part of plaintiff, which told the jury that it was the duty of defendant to furnish plaintiff a reasonably safe place to work is held erroneous, as it placed upon the defendant the absolute duty to furnish plaintiff a reasonably safe place to work, whereas, the law only requires that the defendant use ordinary care to furnish a reasonably safe place.

Appeal from Pemiscot Circuit Court.—*Hon. Henry C. Riley*, Judge.

Reversed and remanded.

*Faris & Oliver* for appellant.

(1) Plaintiff was guilty of contributory negligence. Doerr v. Brewing Assn., 176 Mo. 547; Leffler v.

Brewing Assn., 127 Mo. App. 488; Barry v. Cemetery Assn., 211 Mo. 105; Sands v. Brewing Co., 131 Mo. App. 413; Huss v. Heydt Bakery, 210 Mo. 54; Dickey v. Dickey, 111 Mo. App. 304; Barnett v. Himmelberger, 117 Mo. App. 58; Engleking v. Railroad, 187 Mo. 158; Koppes v. Shoe Co., 116 Mo. App. 154; Ray v. Poplar Bluff, 70 Mo. App. 252; O'Donnell v. Patton, 117 Mo. 13; Roberts v. Railroad, 166 Mo. 370; Hogan v. Railroad, 150 Mo. 36; Loeffler v. Railroad, 96 Mo. 267. (2) Plaintiff Henson was a fellow-servant with Castleman, who is conceded to have cut and placed, or to have assisted in placing in the car the stake alleged to have been defective. Roland v. Tift, 20 L. R. A. (N. S.) 354; Schwind v. Floriston Co., 5 Cal. App. 197; Sanderson v. Lumber Co. 55 L. R. A. 908; Railey v. Garbutt, 112 Ga. 288; Georgia Coal Co. v. Bradford, 62 S. E. 193; Adams v. Iron Cliffs Co., 78 Mich. 271; Buck v. Zinc Co., 204 Pa. 132; Herbert v. Ferry Co., 107 Mo. App. 287; Brown v. Railroad, 95 Mo. 277.

*Ward & Collins* for respondent.

(1) It is only in cases where the facts are undisputed and are such that reasonable minds can draw no other conclusion than that the plaintiff was in fault; that the court can determine the question of contributory negligence as one of law. Johnson & Co. v. Refrigerator Co., 127 S. W. 692; Gress v. Railroad, 109 Mo. App. 720; Meng v. Railroad, 108 Mo. App. 553; Aechhart v. Trans. Co., 190 Mo. 611; Lawrence v. Ice Co., 119 Mo. App. 325; Mauerman v. Siemerts, 71 Mo. 101; Lamb v. Railroad, 147 Mo. 171; Owens v. Railroad, 84 Mo. App. 143; Moriarty v. Sulberger Co., 132 Mo. App. 650; Koener v. Car Co., 209 Mo. 141; Donohue v. Railroad, 91 Mo. 357; Kockenbrink v. Railroad, 172 Mo. 678; Degel v. Trans. Co., 101 Mo. App. 56; Lender v. Trans. Co., 103 Mo. App. 574; Potter v. Railroad, 136 Mo. App. 125;

Frick v. Railroad, 75 Mo. 595; Adler v. Waggoner, 47 Mo. App. 25. (2) It is the duty of an employer to provide for his servants good, safe and properly constructed machinery and implements for carrying on his business and to keep them in good order and condition. Porter v. Railroad, 71 Mo. 66; Reber v. Tower, 11 Mo. App. 199; Sielar v. Railroad, 82 Mo. 430; Craig v. Railroad, 54 Mo. App. 523; Browning v. Railroad, 124 Mo. 56; O'Neal v. Plant Co., 58 Mo. App. 628; Zeller v. Light Co., 92 Mo. App. 107. (3) An employee had a right to assume that the appellant had done its duty and he could work on the car with safety. Doyle v. Railroad, 140 Mo. 1; Gibson v. Railroad, 46 Mo. 163; Burkar v. Rope Co., 217 Mo. 466; Bank v. Railroad, 40 Mo. 458; Combs v. Construction Co., 205 Mo. 367. (4) The master's obligation to furnish suitable machinery for the servant's use, or a safe place in which to work cannot be delegated to a servant, so as to relieve the master. Bridges v. Railroad, 6 Mo. App. 392; Bartlet v. Trorlicht, 40 Mo. App. 232; Stave Co. v. Sawyers, 119 S. W. 830; Browning v. Railroad, 124 Mo. 55; Parker v. Railroad, 109 Mo. 407; Herdler v. Range Co., 136 Mo. 3; Sackerwitz v. Biscuit Co., 78 Mo. App. 144; Moriarty v. Sulburger Co., 132 Mo. App. 650.

COX, J.—This case was heard at the last term of this court and an opinion rendered by which the judgment was reversed without remanding. Motion for rehearing was sustained and the case reargued at this term.

Action for personal injuries received by plaintiff while in the employ of defendant, judgment for plaintiff for five thousand dollars, and defendant has appealed. Defendant is a corporation operating a stave factory at Pascola in Pemiscot county, and for the purpose of transporting logs from the timber to its factory had built a private railroad some four or five miles

long over which logs were hauled upon flat cars made from old stock cars by removing all the frame work above the floor of the cars and attaching sockets to the sides of the cars in which wood stakes were inserted to hold the logs in place on the cars. Logs were loaded upon these cars in the timber by laborers in the employ of defendant, who were assisted in that work by the engineer and fireman in charge of the engine that pulled the cars back and forth from the factory to the timber. The logs were sixteen to eighteen feet long, and were loaded in two sections lengthwise on the car and two stakes were placed on each side of each section to hold the logs in place, making eight stakes to the car and these stakes were tied together with wires extending across the car. When one or more cars of logs were brought to the mill some of the men who worked at the mill would unload the logs, then go back to their ordinary work. To unload the logs the stakes holding them were cut on one side of the car and the logs rolled off on skids. On June 25, 1907, the foreman at the mill or factory directed Mr. Mockaby, his assistant, to unload a car of logs and he, with his plaintiff and two other men, proceeded to that work. The stakes were cut on one side and one tier or bulk of logs had been unloaded and part of the other tier when, in the effort to roll off a log a little longer than its fellows and lying on top and between two other logs, two men were at one end of it, one man at the other end, and plaintiff with a canthook stepped up on top of the logs and took hold of the log with the canthook, and as the men lifted in the attempt to roll this log off a stake on the opposite side of the car gave away and the logs rolled off the car on the wrong side carrying plaintiff with them and severely injuring his left leg, resulting in its amputation.

Plaintiff's action is grounded in negligence. The allegation of negligence is covered by the following

which we quote from his petition. "Plaintiff states that said car belonged to the defendant and was old, rotten and wornout, and provided with but one pocket or socket in which to place stakes or standards on that side of said car where said logs fell off, and had but one stake or standard on that side of said car; that one stake or standard on said side of said car, on account of the great weight and pressure of the carload of logs against it, was totally insufficient to hold said load of logs; that said stake or standard was old, worm-eaten and defective; all of which said facts were then and there well known to the defendant, or by the exercise of ordinary care could have been known to defendant, but none of which facts were known to the plaintiff; and that by reason of all of said defects, insufficient stakes and wornout condition, said stakes or standards broke as aforesaid, causing the falling of the logs and the plaintiff and his injuries as aforesaid; and that said falling of the plaintiff and his injuries as aforesaid were directly caused by the carelessness and negligence of the defendant in failing and neglecting to provide a reasonably safe place at, around and about which for plaintiff to work, and in negligently and carelessly failing to provide a reasonably safe and sufficient car, with sufficient and safe appliances thereto, and sufficient and safe pockets and standards or stakes therein to well and safely hold the load of logs on said car."

The answer was a general denial, plea of contributory negligence and that the injury was caused by the negligence of a fellow-servant and that plaintiff did not properly care for the limb after receiving the injury.

Plaintiff's testimony tended to show that this car had but one stake on the side of the car where these logs fell and that this stake was partly rotten, and, therefore, weak and defective and that when the men, including plaintiff, began to pry and lift the log they

were attempting to roll off, the defective stake gave
way and caused the logs to roll off and injure plaintiff.
Defendant's testimony tended to show that there
were two stakes.

Appellant assigns as error the failure of the
court to sustain a demurrer to the testimony and con-
tends that plaintiff's testimony shows first, that he
was guilty of contributory negligence in getting up
on top of the logs with a canthook to roll a log off.
We do not agree with this contention. Plaintiff testi-
fied that the other men occupied the space at the end
of the log and there was no room for him to help with
the canthook unless he got on top and that he took
hold of the log near the center to keep it from twist-
ing. This explanation of his action is entirely
reasonable, and instead of showing negligence shows
that his conduct was right and proper.

Second, that the cause of the injury was the break-
ing of a defective stake and defendant was not re-
sponsible because the party who placed the defective
stake in the socket of the car was a fellow-servant of
plaintiff.

If the party who selected and placed this stake was
a fellow-servant of plaintiff then there can be no
question that defendant is not responsible for his
negligence unless the stake be regarded as a part of
plaintiff's place to work and the master should, for
that reason, he held responsible; for the employer is
not ordinarily liable for injuries to an employee re-
sulting from the negligence of fellow-servant except
in cases in which the rule has been eliminated by stat-
ute.

Were plaintiff and the party who placed the de-
fective stake in the car fellow-servants? There is
probably no question that has given the courts more
trouble than this one of determining when and under
what circumstances one employee shall be regarded
as a fellow-servant of another employee of the same

master. Some effort has been made to lay down rules
by which to determine this question. Thus in Moore
v. Railroad 85 Mo. 594, it was said "All are fellow-
servants who are engaged in the prosecution of the
same common work, leaving no dependence upon or
relation to each other except as co-laborers without
rank under the direction and management of the master
himself, or of some servant placed by the master over
them." In Relyea v. The Railroad, 112 Mo. 86, 20 S.
W. 480, it is said, "They are co-servants who are so
related and associated in their work that they can
observe and have an influence over each other's conduct
and report delinquencies to a common correcting
power." But neither of these tests can be said to be
infallible and the trend of the later decisions has been
to allow each case to be determined upon its own facts,
and this seems to be the only safe course to pursue for
if we were to undertake to analyze the decided cases
and deduce therefrom general rules by which each case
could be determined we should find ourselves engaged
in an impossible task. We should not proceed very
far with such an undertaking until it would be apparent
that the courts are in irreconcilable conflict. The
Supreme Court of this state to which we must look as
the final arbiter in all cases is hopelessly in conflict
with itself on this question as has been clearly pointed
out by Judge MARSHALL in Grattis v. Railroad, 153 Mo.
380, 55 S. W. 108.

In this case the evidence shows the business of this
defendant was under the direction and supervision of
one superintendent and one foreman and each, when
acting, had control of all the employees. Its business
was to cut logs in the forest, haul them to the factory
and make them into staves and headers. The handling
of the logs was done by loading them on cars in the
forest, hauling them to the factory and unloading them.
They were loaded by the engineer and fireman of the

engine that hauled the cars, and some other men in the forest; they were unloaded by any men who could at the time be spared from their work in the factory, and all these men were engaged in the common employment of getting logs from the forest to the mill, all working for the same party and under the immediate direction of the same foreman.

The plaintiff testified as to his own duties as follows: "My duties were to run the drag saw under the shed when it was running, and to do whatever else I was told to do by the foreman." From this it appears that plaintiff was liable to be assigned to assist in any part of the entire work. Had the foreman so directed, it would have been the plaintiff's duty to have gone to the forest and assisted in loading logs the same as it was his duty to assist in unloading logs after they were brought to the mill. We are of the opinion that under all the testimony, including the testimony of plaintiff as to his employment and duties, that he and the parties who loaded the logs were fellow-servants.

Plaintiff contends that should he be held as a fellow-servant of the party responsible for the defective stake yet this will not bar recovery for the reason that it was the duty of the master to use ordinary care to furnish plaintiff a reasonably safe place to work, and that this duty cannot be delegated to another and insists that the stake was a part of the place where, or the appliances with which, plaintiff was required to work and that, therefore, the fellow-servant rule does not apply.

It is the duty of the master to use ordinary care to furnish the servant a reasonably safe place in which to work, and this duty cannot be delegated. [Parker v. Railroad, 109 Mo. 362, 19 S. W. 1119; Herdler v. Buck Stove & Range Co., 136 Mo. 3, 37 S. W. 115; Combs v. Construction Co., 205 Mo. 367, 104 S. W. 77.]

While the master is held to the use of ordinary care to furnish his servant a reasonably safe place to work yet when he has done this he has discharged his whole duty, and in doing this he may trust the servant himself, or a fellow-servant, to perform the ordinary and simple duties incident to the servant's employment and resting upon the servant's knowledge and skill. Hence, it has been uniformly held by our courts and other courts of high authority that if in the performance of the work it shall be necessary for the servant himself or a fellow-servant to prepare a place in which to perform the work, and the master shall use proper care to furnish proper material and competent fellow-workmen and a fellow-servant shall select bad material when good material is also available and by reason of that act a fellow-servant is injured the master is not liable. [Herbert v. Wiggins Ferry Co., 107 Mo. App. 287, 80 S. W. 978; Steffenson v. Roehr Co., 136 Mo. App. 225, 116 S. W. 451; Bowen v. Railroad, 95 Mo. 277, 8 S. W. 230; Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934; Kelley v. Norcross, 121 Mass. 508; Calton v. Richards, 123 Mass. 488; Hefferen v. Northern Pacific Railroad (Minn.), 48 N. W. 1; Leishman v. Union Iron Works (Cal.), 83 Pac. 30; Callan v. Bull (Cal.), 45 Pac. 1016; Ross v. Walker (Pa.), 21 Atl. 157; Prescott v. Ball Engine Co. (Pa.), 35 Atl. 224; Frazer v. Red River Lumber Co. (Minn.), 44 N. W. 878.]

In this case the car used in transporting logs was furnished by the master to the servants without any stakes, and while stakes were necessary they were to be cut and placed in the sockets by the servants themselves and the use to which each stake was put was only a temporary use, the stakes being changed, in part at least, with every load. Under these facts and the rule above cited if we regard the defective stake as a part of plaintiff's place to work yet the simple duty

of selecting and cutting a stake from a tree in the forest and fitting it in the socket of the car, as was necessary with each load of hogs, was a simple duty incident to the servant's employment and could well be entrusted to the servants themselves without supervision from the master as was done in this case. There is no intimation that there were not plenty of sound trees in the forest from which to select stakes and as the stake was selected and prepared by a fellow-servant of plaintiff defendant cannot be held responsible for its condition.

Error is assigned in giving and refusing instructions. The first instruction given on the part of plaintiff tells the jury that it was the duty of the defendant to furnish plaintiff a reasonably safe place to work, etc. This was erroneous as it placed upon defendant the absolute duty to furnish plaintiff a reasonably safe place to work whereas the law only requires that the defendant use ordinary care to furnish a reasonably safe place.

Respondent contends that even if the condition of the stake be chargeable to a fellow-servant and defendant released from liability therefor, yet there is sufficient testimony to permit him to go to the jury on the question of insufficient sockets on the car. When this case was first decided we were of the opinion that this position was not well taken, and so, at that time, reversed the cause without remanding, but on consideration of the motion for rehearing we concluded that possibly we were in error on that question, and now after a further examination of the testimony we have concluded that there is testimony enough to indicate that the plaintiff may have a cause of action independent of the rotten condition of the stake, and shall, therefore, remand the cause for a new trial.

Judgment will be reversed and cause remanded. *Nixon, P. J.,* dissents; *Gray, J.,* concurs.

## DISSENTING OPINION.

NIXON, P. J.—We are unable to assent to the proposition stated in the foregoing opinion that the servant who cut the stake in the woods which proved defective was the fellow-servant of plaintiff in such a sense as to relieve the master of liability.

Under the law governing the facts of this case, the plaintiff, as defendant's servant, had the right to expect that his master would furnish him with safe appliances and a safe place in which to do his work and would not surround him with dangerous agencies or expose him to their operation; and whether such agencies were in charge of the master personally or his servant was wholly immaterial.

The stakes in the platform of the car subserved two purposes, one to hold the logs in their places on the platform of the car while they were being transported to the mill, and the other to support the logs in their places on the platform while they were being unloaded. The stakes held the logs until they could be moved from the car to the skids, and for that use they became a necessary part of the appliance with which the work was being done. Whether we call the stake in question a part of the car, or a part of the platform, or an instrumentality, or whether we call it an appliance, is wholly immaterial in determining the master's liability. The car with its sockets, stakes and platform certainly constituted an appliance or instrumentality which had been furnished to the plaintiff by the defendant master, and which plaintiff used in the discharge of his duties in unloading logs from the car. If the rotten stake formed no part of the platform of the car and had nothing to do with the safety of the place where plaintiff was at work, how is it that as soon as the stake gave way the unloading of the logs in the usual way was instantly suspended, and the plaintiff

was thrown from the place where he was at work to the ground with the logs on top of him? The duty of the master to his servant under the circumstances disclosed in this record was to use reasonable care to furnish the plaintiff with a safe appliance with which to work or a safe place to work in. The mere fact that new stakes may have been furnished with each carload of logs that were hauled to the mill, and were temporary and not permanent, in no way relieved the master of the duty that the law imposed upon him. The fact that the stakes were changed with each load would only increase the chance of getting a defective stake and therefore require additional diligence on the part of the master.

It was expressly held in the case of Pennsylvania R. Co. v. La Rue, 81 Fed. 148-151, that in the case of a car employed in the transportation of lumber, side standards to keep the load in place, whether such standards are for constant use, and permanently attached to the car by chains, or are unattached and intended for use on a single occasion, are appliances necessary for the proper equipment of the car, and as essential to the safe transportation of the load as is a proper car body. *"These side standards, to all intents and purposes, are part of the car."*

In the case of Bushby v. N. Y., L. E. & W. R. Co., 14 N. E. 407-409, it was held that the stakes of a lumber car are constituent parts of the car. "The platform and stakes constituted the bottom and sides of the car, and one was as much a part of it as the other."

In the case under consideration, the platform was furnished to the plaintiff by the master in a completed state for him to work on or with and was adapted to the work he was to perform. The plaintiff was not with other co-employees to work in the woods and prepare the car with stakes and load it with logs, but his duty so far as concerned the car was to unload it after it arrived at the mill. Hence the rule does not

apply to this case that where the master leaves the workmen themselves (one of whom becomes a plaintiff) to prepare the appliance, the master is not liable.

It was held in Port Blakeley Mill Co. v. Garrett, 97 Fed. 537, that stakes which fit in sockets on the side of a flatcar designed for transportation of lumber are appliances necessary for the proper equipment of the car.

In the case of McIntyre v. Boston & M. R. R. Co., 39 N. E. 1012, a plaintiff, while using due care, was injured by the breaking of a rotten stake used to hold a load upon a platform car and assist brakemen in crossing from car to car. Held, that the defendant railroad company was liable, though there was evidence that it had furnished sound lumber for stakes, and competent men to prepare them.

It was held in the case of Kansas City Car & F. Co. v. Sawyer, 53 Pac. 90-92, that a servant to whom the master entrusts the duty of selecting appliances for other servants to work with is not their fellow-servant so as to prevent liability of the master to them for injuries caused by his negligence in performing that duty. See, also, Chicago & A. Ry. Co. v. Maroney, 48 N. E. 953.

As stated, the side standards were a part of the car, and the car with the stakes when it arrived at the mill was a completed instrumentality with which the plaintiff was to work in unloading the logs. In furnishing the stakes as a part of the car to support the bunk of logs on the opposite side of the car from which they were being unloaded, the master owed his servant, the plaintiff, the positive duty of furnishing stakes that were reasonably fit for the purpose, and reasonably sufficient to support the logs while they were being unloaded. In the reasonable discharge of this duty, he should have ascertained whether the stakes furnished were reasonably sufficient to bear the ordinary working strain to which they were likely to be subjected.

The plaintiff had the right to rely upon the master discharging this duty, and such duty could not be shifted from the shoulders of the master to those of any servant however high or low.

In cases like the present, the question of the liability of the master turns rather upon the character and nature of the act done than upon the relation of the several servants to each other. If the act is the discharge of some positive duty owed by the master to the servant, then the negligence therein, being non-delegable, is the negligence of the master himself. [Friedman v. Empire Life Ins. Co., 101 Fed. 1. c. 535; Oglesby v. Mo. Pac. Ry. Co., 177 Mo. 1. c. 310, 76 S. W. 623; Browning v. Wabash W. Ry. Co., 124 Mo. 55, 27 S. W. 644; Lewis v. St. L. & I. M. R. Co., 59 Mo. 495; Siela v. Hannibal & St. J. R. Co., 82 Mo. 1. c. 435.]

. A broad line of demarkation exists regarding the duty of a master to his servant as to whether he furnishes a completed appliance for his servant to work with, or whether he furnishes the servant the materials and entrusts him with the duty of preparing the appliance. In the latter case, if the preparation of the appliance is a part of the work which the servant (who is injured) is required to perform, the master is not liable for any defect in his preparation arising from the negligence of another servant. This is based on reasoning of which the case of Relyea v. The Kansas City, Ft. S. & G. Ry. Co., 112 Mo. 86, 20 S. W. 480, affords an illustration and in which it is said: ". . . they are co-servants who are so related and associated in their work that they can observe and have an influence over each other's conduct and report delinquencies to a common correcting power." The cases cited, in the majority opinion, as we understand them, belong to this class. This may be well exemplified by the case of Forbes v. Dunnavant, 198 Mo. 193, 95 S. W. 934, cited in the majority opinion, in which two carpenters, plaintiff and one Redford, were jointly engaged

in building a scaffold. The master had furnished for
their use a mass of raw material with which they were
to erect the scaffold. Redford, the associate carpenter
of plaintiff, selected a bad board from the lot, which
broke under plaintiff's weight and plaintiff was
severely injured. The court, in commenting on the
facts, said: "Certainly, reason is with the defendant
in this case. The reason of the thing lies with the
proposition that Dunnavant could properly trust the
judgment of Forbes and Redford to select sound led-
gers, (boards). Because, by the very act of hiring
themselves to him, they held themselves out as capable
of doing that very thing."

Furthermore, the majority opinion seems to have
overlooked the fact that the Missouri cases cited there-
in have, by a subsequent opinion of the Supreme
Court, been carefully distinguished from application
to facts such as disclosed by the record in this case.
In the case of Combs v. Rountree Construction Co.,
205 Mo. l. c. 387, 104 S. W. 17, the court, in comment-
ing on the case of Bowen v. Railroad, 95 Mo. l. c. 277,
8 S. W. 230, said: "When the preparation of the appli-
ances is neither entrusted to nor assumed by them (the
servants), the master may be held guilty of negligence,
if defective appliances are furnished, even though the
*workmen themselves are employed in the preparation
of them.*" The rule, as laid down by the text-writers
is as follows: "It is generally held that where the ap-
pliance is furnished by the master as a completed in-
strumentality for the use of the employees who are to
work thereon, the fellow-servant rule is not applica-
ble." [26 Cyc. 1330.] See, also, Chicago, etc., R. Co.
v. Scanlan, 48 N. E. 826; Haworth v. Seevers Mfg. Co.,
51 N. W. 68, 62 N. W. 325; Kansas City Car, etc., Co.
v. Sawyer, 53 Pac. 90; McCone v. Gallagher, 44 N. Y.
Suppl. 697; Chambers v. American Tin Plate Co., 129
Fed. 561; Pennsylvania R. Co. v. La Rue, 81 Fed. 148-

151; Bushby v. N. Y., L. E. & W. R. Co., 14 N. E. 407; Port Blakeley Mill Co. v. Garrett, 97 Fed. 537.

In the present case, the plaintiff, as servant, was charged by his employer with no duty, either to select stakes or to place them in their sockets; nor was he engaged with any associate in that service; nor was he charged with any duty with respect to the safety or inspection of the cars or platform on which or the stakes with which the master required him to work. His duty was to assist in unloading the logs, which he was discharging at the time of the accident under the immediate supervision of the defendant's "straw-boss;" and while the plaintiff stated that it was his duty to do whatever else was required by the foreman, this evidently meant that he was to do what was required of him at the mill (and not in the woods) for he had never worked elsewhere. We are unable to see how it was the duty of the master to furnish a car with a sufficient number of sockets for stakes but not his duty to furnish sound stakes for the sockets. We are therefore of the opinion that it was the duty of the defendant as the employer of plaintiff to use ordinary care to furnish plaintiff a reasonably safe car with reasonably safe appliances thereto and with reasonably safe sockets and standards, and of sufficient number to well and safely hold the logs on the car while plaintiff was assisting in unloading them so as to prevent the same from falling off the side at which they were not being unloaded.

The excuse for the length to which the principles of this case have been examined in a dissenting opinion is their importance as the trend of present judicial decision is and ought to be in the direction of restricting and not extending the doctrine of fellow-servant.