## LANE BROS. CO. v. COUCH.

(Circuit Court of Appeals, Sixth Circuit. January 3, 1912.)

### No. 2,152.

1. MASTER AND SERVANT (§ 265*)—DEATH OF SERVANT—RES IPSA LOQUITUR.
   That a servant, while working as a fireman on a locomotive, was killed by being struck by a timber which fell from a flat car, due to insufficient binding stakes on the side, was insufficient of itself to raise an implication of the master's negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877-908, 955; Dec. Dig. § 265.*

   Application of doctrine of res ipsa loquitur in action for injuries to servant, see note to Carnegie Steel Co. v. Byers, 82 C. C. A. 121.]

2. MASTER AND SERVANT (§ 265*)—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE.
   That a railroad fireman, when struck and killed by a timber falling from a flat car in front of an engine, was standing in the gangway between the engine and the tender, was insufficient to raise a presumption of contributory negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877-908, 955; Dec. Dig. § 265.*]

3. MASTER AND SERVANT (§ 111*)—DEATH OF SERVANT—EQUIPMENT OF RAILROAD CARS—DUTY OF MASTER.
   Where defendant railroad construction company used an engine, on which decedent was employed as fireman, and a flat car with which to convey timbers to a bridge in process of construction, and decedent was killed by one of the timbers falling from the car because of the insufficiency of stakes, both in number and quality, provided to hold the timbers on the car, such failure was an omission to perform a duty devolving on the master; decedent being entitled to assume that the car had been equipped by defendant with the necessary appliances to hold the load the car was designated to carry during the normal incidents of the expected trip.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 215-217; Dec. Dig. § 111.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. MASTER AND SERVANT (§ 293*)—DEATH OF SERVANT—INSTRUCTIONS.

Where decedent was killed by timber falling from a flat car, due to a failure to provide sufficient retaining stakes, a request to charge that, if the timbers were loaded and handled in the way usual and ordinary on such a construction track, plaintiff could not recover, was properly refused, as omitting the requirement that the method was not only the customary one, but customary among ordinarily prudent operators.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1161; Dec. Dig. § 293.*]

In Error to the Circuit Court of the United States for the Northeastern Division of the Eastern District of Tennessee.

Action by Walter H. Couch against the Lane Bros. Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Lane Bros. Company, a contracting corporation, was engaged in building a railroad, and the deceased, Couch, was in its employ as a locomotive fireman on a construction train. A bridge structure being ready for the ties, this locomotive undertook to haul them from the loading siding to the bridge site. These ties are heavy timbers 11 feet long, 11 inches wide, and 8 inches thick. They were piled five tiers high and three tiers long, upon a 40-foot flat car. The car had, upon each side, nine sockets for side standards, and as it left the siding was provided with five stakes upon each side. Opposite stakes were not stayed or tied to each other across the top. This flat car was pushed ahead of the engine. Upon a curve, and in a cut, two of the side stakes broke, and some of the ties fell to the ground. One of them was up-ended, caught Couch as he was standing in the gangway, and crushed him against the tender. His administrator brought this action, alleging that, in view of the character of the load and the rough nature of the construction track, there was negligence in using a flat car without a sufficient number of suitable stakes properly stayed. The issues were submitted to the jury, which found for the plaintiff.

Alfred Mack and C. W. Margraves (A. T. Bowen and Cohen & Mack, on the brief), for plaintiff in error.

L. H. Trim (R. C. Coleman and Shoun & Trim, on the brief), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). [1] The event demonstrated that the stakes were not sufficient. This does not, of itself, support an implication of negligence; but the conclusion of the jury from all the facts that there was negligence must stand, unless for lack of sufficient legal foundation. We think there was abundant testimony tending to show a lack of due care, and tending to show that the stakes were not reasonably sufficient, in number or quality, or both. The testimony established or tended to establish that the track was very rough, so that the car would get violent lurches; that these were not ordinary ties, but were heavy timbers, requiring strong side supports; that there should have been two or three standards on each side against each of the three tiers, while in fact there was, opposite one of the tiers, only one standard; and that the stakes furnished were weak.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

[2] We think, also, there was no presumption of contributory negligence required to be drawn from the fact that Couch was standing in the gangway.

[3] These considerations aside, there remains the question whether the matter of providing this car with side standards pertained to the employer's duty to furnish suitable cars, properly constructed and equipped, and so to a nondelegable duty, or whether it pertained to the loading of the cars, and so would bring into action the fellow servant rule. If the former, the case was properly submitted to the jury; it might be otherwise, if the case was of the latter class.

If we had to do only with the matter of staying the tops of the respectively opposite standards, by wire or by crosspiece, that might involve only the loading operation; but this record is not so shaped as to present that question by itself.

A car must be provided fairly suitable to the uses to which it is to be put. There may be no sides, as in the ordinary flat car carrying dirt, or partial sides of varying shapes and heights, as in the gondola cars, or complete sides, inclosed, as in a box car, or open, as in a cattle car. When ties, boards, or timber are carried in a box car, sufficient sides are present. So, too, if they are carried in a gondola car, if not loaded too high; but, when carried on a flat car, sides must be provided. Because of the temporary and changing uses of flat cars, they cannot have permanent sides; but these must be provided on each trip, adapted to the purposes of the trip. If, before the trip, the flat car was sent to the shop and outfitted with the kind of side standards specified for the trip, it would seem clear that they were a matter of equipment and not of loading. We think that they do not lose this character because they are provided, not at the shops, but at the point of loading, and that employés having to do with such a car in transit, are entitled to assume that, before starting on its journey, the company used ordinary care to provide it with such side standards as were necessary to retain its load in position during the normal incidents of the expected trip. This has been held, in carefully reasoned opinions, in Pa. R. R. Co. v. La Rue, 81 Fed. 148, 27 C. C. A. 363 (C. C. A. 3), and Port Blakeley Mill Co. v. Garrett, 97 Fed. 537, 38 C. C. A. 342 (C. C. A. 9). See, also, comments on the La Rue Case, in B. & O. R. R. v. Brown, 146 Fed. 24, 29, 30, 76 C. C. A. 482. We think the trial court acted correctly in adopting the rule of these decisions.

Counsel urge that this was rough construction work, and not the operation of a finished railroad. True; but Couch was not participating in the work which created the danger, as was the workman in Morgan Co. v. Frank, 158 Fed. 964, 86 C. C. A. 168 (C. C. A. 6); nor was the injury due solely to the roughness of the track. We do not see that the temporary nature of the track had any tendency to relieve the company from the duty of providing the car with equipment reasonably safe for the use to which it was put, nor to transform a nondelegable duty into one delegable. The question of what was proper equipment, as a question of fact, would be affected by the character of the work; but the jury was properly instructed along this line.

We are also told that the case is governed by the rule which this court applied in Noble v. Crane & Co., 169 Fed. 55, 94 C. C. A. 423. That was a case where the broken scaffold was built from defective timber selected by the fellow servant of the injured plaintiff. The employer owed no duty except to furnish raw materials. The building of the scaffold was a part of the work in progress, just as was the loading of the car here. Holding, as we do, that the side standards were a part of the inherently necessary equipment, and not an incident of the loading, the Noble Case is not applicable. The case is within the rule of Kreigh v. Westinghouse Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984, as applied by this court in Bryson v. Gallo, 180 Fed. 70, 76, 103 C. C. A. 424.

[4] The company requested an instruction that, if the ties were loaded and handled in the way usual and ordinary on such a construction track, the plaintiff must fail. This was properly refused. It overlooked the clear contingency that a method may be ordinary, and still be dangerous or reckless. The criterion is not merely the custom, but the custom of ordinarily prudent operators. Tex. & Pac. Ry. Co. v. Behymer, 189 U. S. 468, 470, 23 Sup. Ct. 622, 47 L. Ed. 905.

It results that the judgment should be affirmed, with costs.