JULIA FARRELL, ADMINISTRATRIX, *vs.* THE EASTERN MACHINERY COMPANY.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Included in lumber provided and set apart by the defendant for the use of its employees in erecting stagings for installing elevators, which it manufactured and sold, were two planks which were de-fective and unfit for such use, a fact which the exercise of reason-able care would have disclosed. The use of these planks in a stag-ing, built by the defendant's superintendent, caused it to fall, and resulted in the death of the plaintiff's intestate, an unskilled laborer in the defendant's employ, who was assisting its superintendent in installing one of its elevators. *Held :—*

1. That the defendant had failed to discharge the full measure of its duty in respect to providing reasonably safe appliances for its

servants' use, and was therefore liable in damages for the injury caused thereby, notwithstanding that in the lumber supplied there was ample material suitable for constructing the required staging.

2. That the intervening negligence of the defendant's superintendent, in failing to observe and discard the defective planks when he built the staging, could not absolve the defendant for consequences for which its own neglect was an efficient cause.

A proper compliance with the letter and spirit of the statute (§ 802), which provides that errors must be "specifically" assigned in the reasons of appeal, requires that they be assigned individually and not in gross, and that none be assigned which are frivolous, unnecessarily repetitous, or which are not made in good faith; and therefore an assignment that the trial court erred in overruling the claims of law stated in a particular paragraph of the finding, which contained eighteen claims widely different in character, does not conform to the statute nor require the consideration of this court on appeal.

Argued November 10th, 1904—decided January 4th, 1905.

ACTION to recover damages for causing the death of the plaintiff's intestate by negligence, brought to and heard in damages by the Superior Court in New Haven County, *Ralph Wheeler, J.;* facts found and judgment rendered for the plaintiff for $3,000, and appeal by the defendant. *No error.*

The defendant manufactured and installed elevators. One Maynard was employed to superintend and take charge of this department of its business. He was an experienced and competent man. Farrell, the plaintiff's intestate, was employed by the defendant as a laborer. For the most part his work was in the factory, but on a few occasions he had been sent out under the direction of others to assist in installing elevators. He was unskilled, had no trade, experience, training or education to qualify him to judge the strength or sufficiency of any of the various forms and qualities of material or construction used in or about this work, and was not expected to exercise any judgment in that regard. Others over him were relied upon for all matters involving the exercise of discretion, judgment or skill. The defendant had a contract for the erection of a freight elevator in one of the buildings of the National Wire Corporation.

Maynard superintended the construction of the elevator and its parts, machinery and appliances, and when this work was completed took immediate charge of the work of installation, upon which he personally labored with his hands. Farrell was sent to help him. These two together did the work involved, Maynard directing.

In a room in the defendant's factory the defendant kept certain planks and boards which, to quote the finding, "it had provided and stored expressly for use in the construction of staging or platforms when necessary in the installation of elevators." When the Wire Company's elevator was ready for erection, Maynard sent Farrell to this room to get the necessary staging material therefor. Farrell went in and pushed the required amount of boards or planks through a window hole into the room where Maynard was. This, at least, Maynard saw, and the planks so obtained were by his direction carried to the Wire Company's building to be there used in the construction of the platforms and stagings necessary in the erection of the elevator. Maynard, representing the defendant, also obtained from the Wire Company permission to use such as might be needed of an ample supply of suitable timber, planks and boards which was in the latter's building and in the vicinity of the elevator location.

The building was one of three stories, and the elevator was to run from the bottom to the top of it. One side of the elevator well was next to the side of the building. At the middle of that and of the opposite side were the two upright main posts for the support of the elevator as it passed up and down. The tops of these posts were connected by a heavy timber which furnished the support of one end of the cross-pieces which were to hold the sheaves or wheels over which the cable was to pass. For the erection of the elevator a staging extending over and across the well was required on the upper floor, as on the other floors. This upper floor staging was required to be about eight or ten feet above the floor. It was necessary, in order that Maynard and Farrell might stand thereon as they lifted and put in position the machinery and appliances, including the sheaves referred

to, which weighed about two hundred and fifty pounds each. It was necessary, therefore, that the staging be strong enough to bear not only the weight of the two men but the additional strain incident to the lifting of said sheaves.

For this purpose a staging was built under Maynard's direction. Uprights were set up on the floor on the side opposite the wall, and a plank extending parallel with the wall was fastened thereto with its edge uppermost. This plank was intended to furnish the support for the stage flooring at that side. The lateral joists in the wall were used for that purpose on the opposite side. The span thus left was about ten feet in length. In order that the men might have a platform upon which to work upon each side of the main posts and cross timber, the staging had to be so built that it provided two practically separate platforms across the well, which were some little distance apart. These separate platforms, here and elsewhere in the work, were built one plank wide and two thick. The planks used were about one and one quarter inches in thickness. The planks having been thus superimposed, they were nailed together and to the lateral supports. On one side and some distance away a single plank was laid parallel to the others. This plank was not near to the point of work, although part of the same structure. Cross planks were then laid upon the others, thereby connecting them so that a person could walk from one of the three platforms to the others.

The supports having been prepared, Maynard directed Farrell to hand him up planks for the flooring. This Farrell did, taking them from the pile at hand, which had been brought from the defendant's factory. When one of the planks was passed up, Maynard observed a knot in it, and remarked upon it, to which remark Farrell made some response. Maynard thereupon laid it down upon the supports to serve as the bottom plank in the platform on one side of the main posts. He then tested it by jumping upon it while supported from above. Another plank was then called for, passed up and laid upon the first, thus, after fastening, completing the platform on that side. The rest

of the staging was then completed as described. The two planks used as thus particularly described were unsuited for such use by reason, among other things, of their weak and defective condition. The one first referred to contained a knot plainly visible, extending nearly across its width and through its entire thickness.

Maynard, and Farrell under his direction, were standing upon the platform formed of the two defective planks as described, engaged in lifting and pushing into position one of the sheaves, when the planks broke under the strain, precipitating Farrell to the bottom of the well, with the result that he received injuries from which he shortly died. The break occurred about midway of the span, and at the point in the bottom plank where the knot was. It was occasioned by the insufficient and defective condition of the planks.

As the absence of contributory negligence was found by the court, and no question in relation to that feature of the case is raised by the appeal, the facts found which bear upon that matter, and upon certain other matters which have no relevancy to the questions of law presented, need not be recited.

*Seymour C. Loomis* and *Earnest C. Simpson*, for the appellant (defendant).

*Jacob P. Goodhart* and *Robert C. Stoddard*, for the appellee (plaintiff).

PRENTICE, J. The defendant manufactures and installs elevators. Farrell, the plaintiff's intestate, who was an unskilled laborer, was its servant in the installation of a freight elevator in one of the shops of the National Wire Corporation. He worked with and under the direction and superintendence of one Maynard, another employee, who was skilled in the business, competent for the work entrusted to him, and a suitable fellow-servant. The prosecution of the work upon which they were engaged necessitated the erection and use, upon each floor of the building, of stagings

conveniently placed over and across the elevator well. These stagings were required for the support of the men as they were engaged in putting the machinery in position, and to be suitable it was necessary that they be strong enough to bear not only their weight, but the strain resulting from such lifting of machinery parts as was involved in the work.

Farrell met his death through a fall down the well, which was occasioned by the giving way of the staging platform upon which he and Maynard were at the time standing in the act of lifting a piece of machinery into position. . This platform, which was one plank wide, consisted of two thicknesses of plank, one placed upon another, and thus resting upon the supports. The breaking of these planks so placed in superposition was the consequence of their weak and defective condition, which rendered them unfit for staging use, one of them having a knot plainly visible extending nearly across its width and through its entire thickness at the place where it broke.

The trial court found, upon the facts shown, that the defendant as master failed in its duty to Farrell as its servant, and therein was negligent in a manner directly contributing to the latter's injury :. in that (1) it did not use reasonable care to provide reasonably safe appliances and instrumentalities for his work, and (2) that it did not use reasonable care to provide a reasonably safe place for his work. Upon the facts the court also ruled and held that Maynard, in respect to the selection and use of the defective planks, as of all the material used in the staging and in its erection, was the defendant's representative and vice-principal, engaged in the performance of its duty as master.

The defendant contends : (1) that the court was mistaken in its conclusion last recited; (2) that the staging which fell was not, under the circumstances, a " place " within the meaning of the law which prescribes the master's duty ; and (3) that it owed Farrell no duty *quoad* the staging, save those confessedly performed, other than to use reasonable care to provide reasonably suitable and safe material for its erection. As the logical consequence of the defendant's po-

sition thus outlined, it claims that in the application of this rule of duty the material provided by it for the construction of said staging is not to be regarded as that which was taken to the Wire Company's building by the direction of Maynard, but as that larger supply which the defendant kept on hand for staging construction in the room at its factory. The defendant's position upon these points of controversy may, for the purposes of this case, be assumed without decision.

We have, then, this situation. The defendant, as master, is to be charged with no dereliction in duty which arose subsequent to the time when Maynard ordered Farrell to go to the factory room where staging material was stored to obtain that which was to be used at the Wire Company's building. Maynard's acts from that time on are to be treated as those of a servant only,—as the fellow-servant of Farrell. The defendant's responsibility thus becomes limited to such as may have been involved in the presence in that room of the material which was there and under the circumstances of its being there. This responsibility must of course be determined in view of the positive requirement of the master that he shall use reasonable care to provide reasonably safe appliances and instrumentalities for his servants in their work, and upon the theory which the defendant's position assumes, that the supply of material in this factory room is to be regarded as the " provision " in that regard within the meaning of the law.

This view of the situation, however, does not terminate the master's duty and fulfil its requirements prior to the intervention of an act of negligence, and of the very act in which the court has found the negligence to have consisted, to wit: the provision of the defective planks in question as instrumentalities designed and fit to be used for the work for which they were used. The plank with the plainly visible knot in it extending nearly across its width and through its entire thickness was in this room. So also was the other defective and unfit plank which gave way. It is to be borne in mind that this room in question was one in which the de-

fendant kept planks and boards "provided and stored expressly for use in the construction of stagings or platforms when necessary in the installation of elevators." The room did not contain a miscellaneous supply or haphazard collection of lumber. The questions which would be presented by such a condition need have no consideration here. It was the storage place for material set apart, designed and devoted by the defendant to the special use to which it was in fact put with the fatal consequences which furnish the occasion for this suit. This segregation of material was the defendant's act, and as our assumption involves the treatment of it as the defendant's provision, and his only provision, of the necessary reasonably suitable material, it follows that the same fault which Maynard later committed in selecting for use in a particular case the palpably defective plank which gave way—as it might have been expected to do—was earlier committed by the defendant when it selected and set apart the same plank with its palpable defect for use generally by its servants under circumstances like those in which it was used by Maynard and Farrell. *Twomey* v. *Swift*, 163 Mass. 273. This, it will be observed, is not the case where the master has furnished a supply of appliances all free from defects known, or which ought by the exercise of due diligence to have been known, and sufficient for the work for which they are apparently adapted, and the servant has been careless in his selection therefrom for use. It is the very different case, where some of the appliances provided are palpably defective, and for that reason distinctly unfit in their quality to perform the work which might be reasonably expected of them. In the one case the sole negligence lies in the selection for immediate use. In the other there is negligence behind the selection for use, however negligent that selection itself may have been, to wit: negligence in the initial provision of the article as one suitable for the use. Neither is this a case where appliances have been put to a use or strain which was unusual or not to have been reasonably anticipated by the master. The situation which caused the break was the natural and normal one incident

to the work for which the planks were designed, and to the use and strain which must have been foreseen when they were provided.

But it is said that Maynard, as a skilled and competent man provided by the defendant, ought in the exercise of reasonable care on his part to have detected the defective planks and discarded them, and that the accident was therefore attributable to his fault and not chargeable to the defendant. In so far as this contention involves the assertion of any benefit to the defendant from the fact of its having employed in Maynard a man competent to select suitable material and build a suitable staging, it runs counter to the defendant's main contention that Maynard was in no respect its representative doing its duty as master. In so far as it asserts immunity from responsibility for the reason that reasonable care on the part of Maynard would have prevented any unfortunate consequence accruing to Farrell from its negligent act, it is without legal justification. The intervention of negligence on Maynard's part would not suffice to absolve the defendant from liability for consequences of which its failure to exercise reasonable care was an efficient cause. *Ashborn* v. *Waterbury*, 70 Conn. 551; *Carstesen* v. *Stratford*, 67 id. 428; *Ring* v. *Cohoes*, 77 N. Y. 83; *Louisville, N. A. & C. Ry. Co.* v. *Lucas*, 119 Ind. 583; *Carterville* v. *Cook*, 129 Ill. 152; *Ricker* v. *Freeman*, 50 N. H. 420, 432; *Grand Trunk Ry. Co.* v. *Cummings*, 106 U. S. 700.

It is claimed that the defendant is saved from responsibility because the Wire Company had in its building, convenient to the place where the elevator was being installed, ample material suitable for the construction of the staging, and that permission to use this material was, prior to the beginning of the defendant's work of installation, obtained by the defendant through Maynard. If it be assumed that this lumber belonging to the Wire Company was by the course pursued provided by the defendant for its work and workers within the meaning of the law, the result is none other than that the defendant's supply of good material which might have been used was larger than it otherwise

would have been. The presence of the knotty and unfit plank among the material provided, due to the defendant's act, would still remain, and its responsibility, therefore, continue. This feature of the situation, therefore, adds nothing of significance to that which we have assumed to exist in the room at the defendant's factory. We have assumed that there was there a sufficient supply of that which was suitable for use which might have been taken and used by Maynard. Whether this supply was greater or less can be of no legal consequence.

A consideration of most of the reasons of appeal is either embraced within or obviated by the view of the case expressed.

One error assigned, is the overruling of the defendant's claims of law stated in the finding as having been made upon the trial. These claims were eighteen in number and widely different in character. The assignment of error was therefore not specific, as required by statute, and need not be considered. General Statutes, § 802. The reasons for the rule are apparent and weighty, and it should be observed in both letter and spirit. The letter requires particularity and definiteness. The spirit forbids assignments which are frivolous, unnecessarily repetitious or multiplied, or not made in good faith. A proper compliance with the rule, therefore, permits an appellant to assign such errors of law as are in good faith claimed by him to have been committed and of which he has a reasonable expectation that he may wish to take advantage, and none other, and requires that these errors be assigned individually and not in gross. Our enforcement of the requirement of the statute in this case, however, deprives the defendant of the benefit of only one claim of error, and that is the minor and unfounded one that the complaint is not one which will support a judgment for more than the nominal damages incident to the default, by reason of its failure to aver in express terms, the fact found, that the intestate did not have equal means of knowledge with the defendant of the unsafe condition.

Two objections are made to the court's rulings upon the admission of evidence. The defendant could not have been harmed by either.

Exceptions to the finding were taken and are made the basis of reasons of appeal. These all relate to matters which our conclusions and the reasons therefor either render immaterial, or justify.

There is no error.

In this opinion the other judges concurred.