AMERICAN SHIPBUILDING CO. v. LORENSKI.

SAME v. LEWANDOWSKI.

(Circuit Court of Appeals, Sixth Circuit. April 11, 1913.)

Nos. 2,299, 2,300.

1. MASTER AND SERVANT (§ 116*)—INJURIES TO SERVANT—DEFECTIVE SCAFFOLD—MASTER'S LIABILITY.

Plaintiffs, who were employed in defendant's shipyard, were injured by the fall of a wooden structure constructed on one side of a dry dock to afford means of working on the side of a ship in course of construction, and to support a track for the use of a traveling crane. The structure was 42 feet high and extended 650 feet in length, and was composed of transverse frames or bents placed 10 feet apart, constructed of heavy

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

materials. The substructure was regarded by defendant as distinct from the line of stringers on top of the whole structure, being constructed under orders of defendant's superintendent, who was cognizant of the nature and purposes thereof and also the mode in which the work was usually conducted and the special conditions surrounding the construction of the one in question. *Held,* that the structure was not a mere temporary affair constructed by defendant's carpenters and laborers working together, and that defendant did not perform its whole duty by furnishing sufficient material of proper character.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 207; Dec. Dig. § 116.*]

2. MASTER AND SERVANT § 265*)—INJURIES TO SERVANT—FALL OF SCAFFOLD —RES IPSA LOQUITUR.

The fall of a staging or scaffolding without any apparent cause may be regarded as prima facie evidence of negligence on the part of the person who provided it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. § 265.*

Application of doctrine of res ipsa loquitur in action for injuries to servant, see note to Carnegie Steel Co. v. Byers, 82 C. C. A. 121.]

In Error to the Circuit Court of the United States for the Eastern Division of the Northern District of Ohio; Wm. L. Day, Judge.

Actions by Lawrence Lorenski and by Frank Lewandowski against the American Shipbuilding Company. Judgment for plaintiff in each case, and defendant brings error. Affirmed.

These two cases were heard together both below and here, and will be disposed of in this opinion. Damages for personal injuries were sought and recovered in each case upon pleadings substantially alike and upon the same evidence, except as to description and extent of the injuries sustained. No evidence was offered by the company. At the close of plaintiffs' evidence a motion for a directed verdict was overruled, judgments were entered on the verdicts, and the cases are pending here on error.

The plaintiff in error, hereinafter called company, is a New Jersey corporation, and owns and operates a shipyard in the city of Lorain, Ohio. The defendants in error, hereinafter called plaintiffs, were in the company's employ as laborers in the shipyard, and received their injuries February 10, 1909. The plaintiffs were injured by the falling of a wooden structure upon which they were at the time working. This structure was designed for two purposes in shipbuilding. One purpose was to afford means for working on the side of a ship while in course of construction, and the other was to support a track on which one end of a traveling crane used in such construction could be operated. The structure was placed on the north side of a dry dock, and was intended to correspond in purposes with those of an iron structure then maintained on the opposite side; and thus the means for ship construction and of operating the crane were to be alike on each side of the dry dock.

The structure was about 42 feet in height, extending in an east and west direction 650 feet. It comprised 65 transverse frames, or bents, placed 10 feet apart. These bents were each composed of substantial uprights resting on sunken blocks of wood, and the uprights were held in place by strong cross bracings and also by an additional brace for each bent, called a "stay last" (consisting of timbers 2x6 inches and 16 feet long, which were spliced into lengths of 28 feet); one end of each being bolted to and near the top of the upright next to the dry dock, and the other end to a strong oak stake

driven into the ground, except that some of the ground ends were spiked to keel blocks. The work of placing these bents in upright positions was begun at the east end of the structure, where it was securely fastened to an iron structure there permanently maintained. At this point a steam crane was placed for hoisting materials to the top of the structure and also for dragging, by means of a cable suitably adjusted and operated, some of the heavy materials so hoisted along the top of the structure to the places where needed. Among the materials so hoisted were planks, which were placed across the bents to accommodate men working on top of the structure. Among the heavier materials so hoisted were timbers 12x12 inches and 30 feet long. It is not entirely clear whether these timbers, called "stringers," were dragged to points near their respective positions by cable, or were carried there by men. Witnesses differ in their testimony on this subject. The stringers were placed, as far as that feature of the work had progressed, across the bents and immediately over the uprights next to the dry dock; and it was part of the design to place and maintain thereon iron rails, on which one end of the crane was to be operated as stated. The plan of fastening and holding these stringers in place was to bolt iron plates, 24 inches in length, on the face of each of the inner uprights and across the stringers, except at the ends where the plates were to extend lengthwise of each of the two adjoining stringers and also to the supporting upright. Simultaneously with the placing of the stringers in position, beginning at the east end, the work of replacing every third stay last with a heavier brace was begun, as also the attaching of the iron plates. These substituted braces were of pine, 6x6 inches, each fastened to every inner third upright (substantially as the stay last was held), and at the other end by an iron device connected with a substantial foundation.

Enough has been stated to describe the twofold character of this structure and the purpose for which each portion was designed and was to be used. The removal and erection of similar wooden structures are repeated every time the hull of a boat is finished and launched. Indeed, a boat was launched in the earlier part of the very day on which this structure was begun. At the time of the accident the work of laying the stringers had progressed about one-half the length of the staging, and, although the work of attaching the plates for holding the stringers in place was being carried on, the evidence does not clearly show how far it had progressed; but the work of substituting the heavier braces at the points and in the manner stated was then about 150 feet short of the point to which the stringers had been placed in position.

That portion of the wooden structure along which the heavier braces had not been placed fell. The plaintiffs, who were then on the loose planks lying on top of the bents and engaged in putting stringers in place, were thrown into the bottom of the dry dock, a distance of some 75 feet. The rest of the necessary facts appear in the opinion.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio, for plaintiff in error.

Skiles, Green & Skiles, of Shelby, Ohio, and R. B. & A. G. Newcomb, of Cleveland, Ohio, for defendants in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). [1] The contention of the company is that the court erred in overruling the motion to direct a verdict and in its charge to the jury. Both of these features of error are based on the claim that if any negligence intervened it was the negligence of one or more of plaintiffs' fellow servants and not of the company. The theory is that the structure was simply temporary staging to be used in the building of

a. steamboat, and was constructed by carpenters and laborers working together and under the direction, respectively, of a foreman for each class; that the materials supplied were sufficient, both in kind and quantity; and that the staging was constantly changing, and was incomplete when it fell. · It is true that in a comparative sense the structure was intended to be temporary. It was to be removed when the boat was finished; but this is not determinative of the case. It fails to give effect to the nature and purposes of the structure. While it was composed almost entirely of wood, yet it was designed for the upper portion of one side of a dry dock; and the part below the stringers was so planned as to accommodate men working on the outside of the hull of a boat, and to support and carry a structure for the operation of a crane to distribute materials along the boat. It was intended, during the time required to construct the hull of a boat, to accomplish the same ends as those of the permanent iron structure then maintained on the opposite side of the dry dock. Plainly, then, it had to be very substantial in all its parts. Again, counsel take no account of the fact, and it is a fact, that plaintiffs had nothing to do with the selection of the materials for, or the design or construction of, the substructure; that is, the bents and their supports. The plaintiffs began and conducted their work under orders after the substructure had been erected and the stay lasts put in place. Their work consisted of putting planks across the top of the bents for use as a floor and in placing the stringers on top of the bents in the line of the inner uprights described in the statement.

Do the facts, then, present a case simply for the application of the fellow-servant doctrine, or do they present the question whether the master owed the plaintiffs a duty touching the safety of the substructure respecting the placing of stringers upon it and putting them into position? There is a class of cases which hold that when an employer furnishes proper materials for scaffolding and staging, and the workmen themselves construct it as part of the work they undertake to perform and in accordance with their own judgment, the employer is not liable for injuries sustained by one or more of their own number while subsequently using the structure and in consequence of negligence in its construction. The reason is that such structures do not require greater knowledge or the exercise of more skill than is usually possessed by the ordinary laborer or mechanic. Noble v. C. Crane & Co., 169 Fed. 55, 94 C. C. A. 423 (C. C. A. 6th Cir.); Chambers v. American Tin Plate Co., 129 Fed. 561, 562, 64 C. C. A. 129 (C. C. A. 6th Cir.); Armour v. Hahn, 111 U. S. 313, 318, 4 Sup. Ct. 433, 28 L. Ed. 440; Kerr-Murray Mfg. Co. v. Hess, 98 Fed. 56, 59, 38 C. C. A. 647 (C. C. A. 8th Cir.). However, as the present Mr. Justice Lurton said in Chambers v. American Tin Plate Company, supra, after stating the rule of the class of cases before alluded to (129 Fed. 562, 64 C. C. A. 130):

"But the rule is quite otherwise if the employer himself undertake to furnish such scaffolding for the men who are to work thereon. In such case the duty is one of those positive duties of the master toward the servant which cannot be discharged by the substitution of a competent agent. The

act or service to be done is that of furnishing a reasonably safe place or appliance, and negligence in the doing of such a service is the negligence of the master, without regard to the rank of different employés." F. C. Austin Mfg. Co. v. Johnson, 89 Fed. 681, 682, 32 C. C. A. 309 (C. C. A. 8th Cir.); National Refining Co. v. Willis, 143 Fed. 107, 109, 74 C. C. A. 301 (C. C. A. 6th Cir.).

It is true that the stagings involved in those cases were complete in the sense that they were in use as means for constructing something else, but we think they furnish sufficient analogy for the application of their principles to the present case. On the motion to direct, the plaintiffs were entitled to have taken in their behalf the most favorable view of the evidence. Erie R. Co. v. Rooney, 186 Fed. 16, 19, 108 C. C. A. 118 (C. C. A. 6th Cir.); Mitchell v. Toledo, St. L. & W. R. Co., 197 Fed. 528, 533, 117 C. C. A. 24 (C. C. A. 6th Cir.); Hales v. Michigan Cent. R. Co., 200 Fed. 533, 537 (C. C. A. 6th Cir.). Under this rule we cannot ignore the apparent fact that, at least for purposes of its construction, the substructure in dispute was regarded by the company as a structure distinct from the line of stringers, not to speak of the iron rails, designed to be placed upon it and as sufficient to carry their weight and withstand the effect of moving them along the structure and the work of placing them in position. Besides, the difference between the ultimate uses intended to be made of the portion below the stringers and the stringers themselves, as well as the mode of construction adopted (pointed out in the statement), justly require these two parts to be separately considered. There is no sound distinction, then, between a case involving, as this one does, a substructure and another structure to be superimposed upon it, and cases (before cited) relating to false work of a bridge and the bridge to be built upon it, or staging for an iron tank designed to sustain the material for and the work of placing the roof upon it, and the like. It is true, as we have said in the statement, that the work of placing heavier braces at every third bent and of attaching iron plates to the bents and stringers was commenced at the east end of the substructure simultaneously with the placing of the stringers on top of the bents. It is also true that plaintiffs and their associates made faster progress than did the men who were engaged in so putting up the heavier braces and attaching the iron plates; but the evidence does not show that this was out of the course ordinarily pursued in carrying on these different classes of work. Nor does it appear that either such heavier braces or iron plates were regarded as necessary to sustain the substructure while the stringers were being put in place, although it is reasonably to be inferred that they were necessary to sustain the operation of the crane. In short, it is fairly to be deduced from the evidence that the course pursued here in doing the work was in accord with that usually followed, except in some respects which are not helpful to the company.

The evidence tends to show that the ground was so frozen as to prevent driving to their usual depth the stakes which held the ground ends of the stay lasts; that many of the stakes were pulled out of their places by the fall of the structure. Also that in the construction in question the stringers were, for the first time in doing this

class of work, dragged along the top of the staging by steam power cables from the east end of the structure to the points at which they were to be placed, and that this caused the structure to fall. It appears, both by the pleadings and evidence, that a very high wind was blowing during the day of the accident.

[2] The evidence further tends to show, not only that the foremen in charge of the carpenters and laborers directed the work to be prosecuted in the manner and under the conditions pointed out, but also that the superintendent in charge of the shipyard was there and observing the work upon the structure in dispute on the day of the accident. There was a general superintendent of the company, but he was not at this shipyard on that day. He seems to have been at another shipyard of the company at Cleveland. The company was a New Jersey corporation, and, so far as the record discloses, the superintendent present was its principal and controlling representative at the shipyard in question on the day plaintiffs were injured. Apart from the special conditions attending the work on that day, it is clear that the company was cognizant of the nature and purposes of the structure, and also of the mode in which the work was usually conducted on such structures as this; and knowledge of the special conditions mentioned was plainly imputable to the company through the presence and control of its superintendent. Leonard Martin Const. Co. v. Highbarger, 175 Fed. 340, 343, 99 C. C. A. 128 (C. C. A. 6th Cir.). Neither of the plaintiffs had reached the age of legal majority at the time of their injuries; nor had they any knowledge of the capacity of the structure or experience in the work they were doing. If the structure on which they were working was unsafe, it was not because of anything they had done or omitted to do; indeed, contributory negligence is not claimed. It cannot be rightfully said that the company did not provide the staging upon which the stringers were being placed; it presumably designed the structure; it supplied the materials and furnished the men to construct it. It was said in Chambers v. American Tin Plate Company, supra, 129 Fed. 561, 64 C. C. A. 129:

"The falling of a staging or scaffold without any apparent cause may well be regarded as prima facie evidence of negligence on the part of the person who had provided it."

If all the inferences reasonably to be drawn from the evidence are added to this, the conclusion is inevitable that the duty of the master was both involved and violated. Texas & Pacific Ry. v. Howell, 224 U. S. 577, 582, 32 Sup. Ct. 601, 56 L. Ed. 892; James Griffith & Sons Co. v. Brooks, 197 Fed. at pages 726 to 729, 117 C. C. A. 117 (C. C. A. 6th Cir.). It is not important whether some of the fellow servants of plaintiffs were negligent or not; such concurring negligence would not excuse the master. Kreigh v. Westinghouse & Co., 214 U. S. 249, 257, 29 Sup. Ct. 619, 53 L. Ed. 984; Bryson v. Gallo, 180 Fed. 70, 76, 103 C. C. A. 424 (C. C. A. 6th Cir.).

It follows that the motion to direct a verdict for the company was rightly denied. The errors assigned respecting the charge of the court for the most part concerned the submission to the jury of the

question whether the "scaffolding or staging" furnished to the plaintiffs was "a completed instrumentality for the sole purpose of placing heavy track timbers on top of the scaffold." Enough has been said on this subject to require these assignments to be overruled. The only other assignment that need be noticed relates to the company's duty of inspection. We are not satisfied that there was error in this portion of the charge (Petroleum Iron Works Co. v. Boyle, 179 Fed. 433, 437, 102 C. C. A. 579 [C. C. A. 6th Cir.]; James Griffith & Sons Co. v. Brooks, supra, 197 Fed. at pages 729, 730, 117 C. C. A. 117), but it was not in any event prejudicial error, and we do not pass upon it.

The judgment below in each case is affirmed, with costs.