Geoghegan, J.
Heard on motion for a new trial.
This was an action for damages for personal injuries under the federal employers’ liability act. The plaintiff was employed by the defendant as a laborer around the freight house, *34 engaged in the business of trucking freight from the freight depot into cars for the purpose of transportation. On the 17th day of March, 1912, while engaged in the performance of his duties he was injured by the falling of a crate, which was about eight feet long, one foot wide and one foot in depth. This crate stood on end in the car in which the plaintiff had come during the course of the performance of his duties. There is no evidence as to what the crate contained, as to who put it there, and no evidence that there was anything that could cause the crate to fall. The plaintiff had gone into the car, had deposited the freight that he was carrying on a hand truck, and as he turned around to go out of the ear this crate fell down and struck him. ■
At the conclusion of the plaintiff’s case a motion to direct a verdict for the defendant was granted, and this action of the court is now claimed to have been erroneous.
The plaintiff contends that the doctrine of res ipsa loquitur •is applicable to cases arising under the federal employers’ liability law, and cites in support of that proposition the case of Ridge v. Norfolk Southern R. R. Co., 83 S. E., 762, a case decided by the Supreme Court of North Carolina.
In that case a railroad employee was injured while on the top of a box car in a train, caused by the roof of the car being blown off. There were fifteen box cars in the train and the roof of the car upon which the employee stood was the only one blown off. The velocity of the wind at the time was not so great that the employee could not stand on top of the car without difficulty. The court held, under these circumstances, that this was an accident such as in the ordinary course of things does not happen if those having control of the car and the duty to inspect it use proper care, and in the absence of satisfactory explanation by the defendant the accident can be presumed to have arisen from the want of proper care. The court, in that case, at page 767, in discussing the doctrine laid down in the case of Patton v. Railroad, 179 U. S., 658, wherein it was held that the doctrine of res ipsa loquitor is not recognized in cases between master and servant, say that the- rea *35 son for depriving a servant of the benefit of the doctrine no longer exists, and further say:
“Those cases Which deny the applicability of the doctrine in an action by a servant against his master proceed upon the theory that the injury may be referred to the negligence of a fellow servant, or to contributory negligence of the plaintiff, with just as much reason as to the negligence of the master. Under the employers’ liability act the defense of the fellow-servant doctrine is excluded, as is that of contributory negligence to some extent. Hence the reason for the law, as thus stated, having ceased, the rule ceases.”
This reasoning is not persuasive. The court’s view as to the theory upon which the rule laid.down in the Patton case is founded is not borne out by the authorities. The doctrine of res ipsa loquitur is to a great extent founded upon the fact that the evidence as to the true cause of the injury, whether culpable or innocent, is accessible to the party' charged and perhaps inaccessible to the party injured. So that, where an accident happens, that in the ordinary course of events does not happen, the laws call upon him under whose control the thing which caused the accident may have been to explain, rather than upon him who has no control over the cause; but inasmuch as the servant is ordinarily in as favorable position as the master to know and explain the cause of the accident, the presumption as to negligence arising from the happening of the particular event does not ordinarily arise in cases between them. This seems to be the true reason why the federal courts have refused to apply the doctrine as between master and servant.
Now in this case there is no evidence to show that anything was done to cause the box or crate to fall, and unless some inference of negligence can be drawn from the very fact that a box of that kind and character was permitted to stand in a freight ear without any evidence as to how it was put there or as to its contents, then the plaintiff’s case must fail because of the absence of proof of negligence.
As pointed out, it has been repeatedly held by the federal courts that the doctrine of res ipsa loquitur does not apply as *36 between master and servant. Canadian Northern Ry. Co. v. Senske, 201 Fed., 637; Patton v. Texas & Pacific Ry. Co., 179 U. S., 658; Armour & Co. v. Harcrow, 217 Fed., 224. And the question as to what creates a liability under the federal employers’ liability act must be determined by the rules laid down by the federal courts. Seaboard Air Line Ry. v. Horton, 233 U. S., 492; Central Vermont Rd. Co. v. White, 238 U. S., 507.
While it is true in some federal cases it has been said that there is no hard and fast rule with reference to the applicability of the doctrine of res ipsa loquitur as between master and servant, nevertheless, in those cases there was some compelling reason for the court to depart from the general rule, such as, that the facts proved pointed to positive negligence on the part of the master in doing or failing to do some non-delegable duty. See Lucid v. Dupont Powder Co., 199 Fed., 377; American Shipbuilding Co. v. Lorenzi, 204 Fed. 39.
There is another reason why the court was correct in directing a verdict in this case and that is that the action was not brought within two years after the cause of action accrued. The accident happened on March 17, 1912. The petition was filed on April 26, 1915, more than three years after the accrual of the cause of action. The federal employers’ liability act provides that all actions brought under the act must be commenced within two years after the cause of action accrued, and the courts have held that this is not a statute of limitation but is a condition of the right to bring the action. This is conceded by counsel for plaintiff, but he seeks to avoid this bar by setting up in a reply that the defendant company, after the accident to the plaintiff, promised and agreed with him that if he would not bring suit it would provide him with such employment as his physical condition would permit of and take care of him as long as he was disabled, on account of such injuries, from performing the duties of his regular occupation, and that in pursuance of said promise and agreement said defendant did employ him for light work in and about the office of its depot master until about July 7, 1914, but that ever since said date, although the disability of the plaintiff on account of *37 said injuries still exists, said defendant has. refused to give this plaintiff employment, and- counsel for plaintiff sets up these facts as an estoppel on the part of the defendant to plead the statute of limitations.
Assuming that the evidence is sufficient to support the allegations set forth in the reply, it does not seem to me that the plaintiff has brought himself within the rule which provides that wherever one has caused another to refrain from bringing an action for personal injuries by promising a settlement, either in the shape of money or. employment, the promisor is estopped to plead the bar of the statute. I have examined carefully all the cases and I find that almost without exception in the cases that lay down that doctrine there was a promise and a subsequent failure to carry out the promise. In this case, however, it is pleaded and proved that the plaintiff was given employment and that the employment lasted for a period of two years.
'Therefore, it seems to be that inasmuch as there was an offer on one side to settle by the giving of employment, and the acceptance of said employment on the other side, that a complete contract was entered into and that the action for damages then became merged into the right secured by the contract. It would seem strange if one placed under circumstances .similar to those under which the plaintiff herein was placed could accept the emplojunent offered, and then, after a lapse of a period of years, by reason of a discharge on the part of his employer, revive the original action which he may have had for the tort, and thus sweep aside all questions as to whether or not he, by reason of his own conduct or actions, relieved the employer from any further duty to carry out the contract.
I think the rule ought to be that where the employee accepts, in settlement of his injuries, the promise of employment by the employer, and in pursuance of said promise the employee enters upon the employment of the master and is subsequently discharged, the tort is merged into the promise and the action then becomes one, not for the tort, but for the breach of the contract, where the master will have such defenses as may be available to him in actions of similar nature.
*38 The question as to estoppel to plead the statute of limitations for personal injuries was carefully considered in the case of Klass v. City of Detroit, 129 Mich., 35, and after a. careful review of all the leading authorities on the subject the court in that case lays down what seems to be the correct conclusion, in the following language:
“An estoppel to plead the statute of limitation can only be founded on conduct naturally calculated to induce plaintiff into a belief that his claim would be adjusted if he did not sue.”
Now there is no claim here in the reply, nor does the evidence show, that the defendant promised plaintiff that his claim would be adjusted if he did not sue. The most that can be made out of the proof offered in support of the allegations of the reply is that if he did not sue plaintiff would be given a position that he would be able to fill until he had fully recovered from his injuries. He received such a position and entered upon the work.
I am aware that the case of Chesapeake & Nashville Ry. v. Spealman, 114 Ky., 628, seems at first blush to be contrary to the view I have taken. However, in that case the promise was alleged to have been that if plaintiff would not sue his time should be allowed to run on, and his wages paid until he recovered; also that he would be paid by appellant for his injuries when time showed what their extent ivas; and he should have in its service a permanent position as long as he lived, or as long as the superintendent remained on the road. The court held that this conduct tolled the running of the statute of limitations and that the railway company, was estopped to set it up. However, it will'be observed in this ease that part of the promise was to compensate him for his injuries; in other words, to pay him for that for which he might have sued; and therefore the rule laid down is entirely in accord with the rule laid down in the case of Klass v. City of Detroit, supra.
In the case at bar there was no promise to compensate him for his injuries, the testimony being simply to the effect that-he was told that hg had better take a job rather than sue. That *39 his cause of action, under the circumstances, would be one for damages for breach of the contract would seem, inferentially at least, to be supported by the cases of Hopperton v. Railroad Co., 17 Ky. Law Rep., 1322; and Lake Shore & Western Ry. v. Tierney, 8 C.C.(N.S.), 521.
Therefore, the motion for a new trial will be overruled.