## VANIER v. SWETT.

(District Court, D. Maine. June 30, 1917.)

No. 371.

1. MASTER AND SERVANT ⬤⟶101, 102(8)—APPLIANCES AND PLACES FOR WORK—DEGREE OF CARE.

An employer was bound to exercise the care of a reasonably prudent man in providing his employés with safe and suitable materials and appliances for carrying on their work and a safe place in which to perform the work.

2. MASTER AND SERVANT ⬤⟶116(1), 190(12)—LIABILITY FOR INJURIES—SCAFFOLDING—DELEGATION OF DUTY TO FELLOW SERVANT.

Though, where a structure is erected by workmen from material furnished by the master, and the master has no control of the construction, he is not liable for injuries sustained by reason of defects in the structure, if he has used the care of a reasonbly prudent man in the selection of suitable material, the rule does not apply if the employer undertakes to furnish the scaffold for the men, who are to work thereon, and in such case the duty is one of the master's positive duties, which cannot be discharged by the substitution of a competent agent, and the negligence is the negligence of the master, without regard to the rank of different employés.

3. MASTER AND SERVANT ⬤⟶116(1)—LIABILITY FOR INJURIES—DEFECTIVE BRACES.

Where a foreman in charge of ship carpenter work in the hold of a ship selected from a large pile of similar sticks the timber to be used in constructing braces, and sent into the hold of the vesel the exact number of pieces required for the braces, with the intent and expectation that they would be used, the employer could not defeat liability on the theory that it purchased the lumber from a reputable dealer and permitted the workmen to make their own selection.

4. MASTER AND SERVANT ⬤⟶185(19)—LIABILITY FOR INJURIES—INSPECTION—DELEGATION TO FELLOW SERVANT.

Where the master retains control of the work, gives directions in reference to the manner of doing it, and selects the material, the duty of inspection is imposed upon him, and if he attempts to delegate such duty to a fellow workman, the person so delegated becomes his vice principal, and the master is responsible for the negligence of such vice principal.

5. MASTER AND SERVANT ⬤⟶279(1)—ACTIONS FOR INJURIES—COMPETENCY OF FOREMAN—EVIDENCE.

In an action for injuries caused by the breaking of a brace on which plaintiff was working in the hold of a ship, where the evidence showed that the brace was of short leaf Southern pine in a dozy condition, containing knots, and there was expert testimony that lumber of this character was brittle and liable to break when exposed to a sudden jar, but the foreman who selected the timber for the braces testified that he did not know any difference between short leaf pine and long leaf pine, that he ordered the lumber taken from a pile just as it came, and that he sent into the hold any piece of lumber that the employer furnished, the evidence did not show that the foreman had a sufficient knowledge of lumber and a sufficient appreciation of his duty to be intrusted with control of the work.

6. MASTER AND SERVANT ⬤⟶235(7)—LIABILITY FOR INJURIES—DUTY OF INSPECTION.

Where the lumber for braces on which an employé was working was furnished by the employer, the employé was justified in assuming that it was reasonably safe and suitable and had been properly inspected, and was not required to examine the braces for himself.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**7. MASTER AND SERVANT ⟨⟩281(8)—ACTIONS FOR INJURIES—EVIDENCE—CONTRIBUTORY NEGLIGENCE.**

In an action for injuries to an employé, caused by the breaking of a brace on which he was working in the hold of a ship as he was in the act of turning for the purpose of descending, evidence *held* not to show by a preponderance that he was contributorily negligent in attempting to go down the brace as he did.

In Admiralty. Suit by Joseph Vanier, Jr., against Clinton T. Swett. Decree for libelant.

Henry Cleaves Sullivan and Benjamin Thompson, both of Portland, Me., for libelant.

Wm. H. Gulliver, of Portland, Me., for respondent.

HALE, District Judge. This suit is for personal injuries alleged to have been received by the libelant while employed as longshoreman, in ship carpenter work, fitting up the steamship Virginia, preparatory to her loading grain, while lying at a wharf in Portland harbor. The respondent was under contract with the master of the steamship to furnish labor and materials required in erecting shifting boards to fit up the steamship for loading a cargo of grain. The steamship is a large vessel, so constructed in her lower hold, with iron stanchions about three inches apart, that two-inch planks can be put in between them, extending, fore and aft, the whole length of the several holds. After these shifting boards had been put in position, uprights or breast boards were secured to them. On each side of these breast boards were two braces, constructed of timber four inches by six, extending from the breast boards to the wings of the ship, to hold the shifting boards in place, and to prevent the shifting of the cargo while the ship is at sea. These braces were prepared in the ship's hold. After each brace had been constructed, one end of the brace, the nose, as it is called, was beveled off so as to rest against the breast board. The other end was so beveled as to adapt itself to the wing of the ship. Each brace was put in place by hoisting up one end into position, so that the nose of the brace rested against the breast board, at the point where it was to be secured. The in-board end, or nose, of the brace, was then secured to the breast board by nails and by cleating across the top and along the sides. To do this work, one of the men was accustomed to carry the in-board end up a ladder, place it in position, and then get onto the brace and sit astride of it, while securing the in-board end and cleating it. On the morning of November 29, 1915, about 8 o'clock, the libelant, while in the employ of the respondent, was doing this service, and was sitting astride the brace within three or four feet from the top. After completing his work, he had started to turn around, preparatory to coming down off the brace, intending, as he testifies, to lower himself from the upper brace to the lower brace, and then to descend, with his hands on the upper brace, and his feet on the lower brace, which had already been placed in position, some seven feet below the upper brace, secured to the breast board and to the skin of the ship in the same way the upper brace was secured. While backing down

on the upper brace, preparatory to lowering himself to the lower brace, the upper brace broke, five to seven feet from the breast boards, causing the libelant to fall into the lower hold, and causing the injuries for which he seeks to recover.

[1] The pleadings and proofs show that the work was being carried on under the respondent's directions, acting through Mr. Loignons, his foreman, who selected the material with which the work should be done and ordered it sent into the hold of the vessel; that the foreman determined what part of the lumber should be used in the hold, and directed with reference to the manner of carrying on the work. The respondent was bound to exercise the care of a reasonably prudent man in providing the men with safe and suitable materials and appliances for carrying on their work and a safe place in which to perform the work. He contends that the evidence brings the case within that class of cases which hold that a master, who has provided an ample supply of appliances and materials to be used in construction, is not expected to stand over each servant every minute to discover any defect in good material; that the master must employ competent men to take charge of the work, and must furnish enough suitable material, out of which the duty devolves upon the workmen to select material for their use in carrying on the details of the work. The respondent urges that he undertook only to furnish materials, sufficient in kind and suitable in character for the work, and that the negligence in selection, if any, was the negligence of the libelant's fellow servants. He therefore relies upon the law as stated in Colton v. Richards, 123 Mass. 484; McCarthy v. Claflin, 99 Me. 290, 59 Atl. 293; Shearman & Redfield on Negligence, § 195. He contends that whatever fault there was in the wood formed a latent defect; that the material was purchased from a reputable dealer, and there was no duty on the part of the respondent to make particular inspection; but that he might properly rely upon his employés and servants to make such selection as was necessary for carrying on the work. Pellerin v. International Co., 96 Me. 388, 52 Atl. 842; Roughan v. Boston & Lockport Block Co., 161 Mass. 24, 36 N. E. 461; Reynolds v. Merchants Woolen Co., 168 Mass. 501, 47 N. E. 406; Fuller v. N. Y., N. H. & H. R. R., 175 Mass. 424, 56 N. E. 574; Patton v. Texas & Pacific Railway Co., 179 U. S. 663, 21 Sup. Ct. 275, 45 L. Ed. 361; Texas & Pacific Railway Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Frame v. Houston (N. H.) 100 Atl. 545.

[2] It is true that, where a structure is erected by workmen from material furnished by the master, such master, having no control of the construction, is not liable for injuries sustained by workmen by reason of defects in the structure, if he has used the care of a reasonably prudent man in the selection of suitable material. There is a class of cases which holds that, when an employer furnishes proper material for a structure such as may be built by unskilled workmen, and the workmen themselves construct it as part of the work they undertake to perform, and in accordance with their own judgment, the employer is not liable for injuries sustained by a workman while subsequently using the structure, and in consequence of negligence in its

construction; the reason being that such structures do not require greater knowledge, or the exercise of more skill, than is usually possessed by the ordinary mechanic. American Shipbuilding Co. v. Lorenski, 204 Fed. 39–42, 122 C. C. A. 353.

But, as Mr. Justice Lurton said, in Chambers v. American Tin Plate Company, 129 Fed. 561, 562, 64 C. C. A. 129, 130, where the subject of the contention was a certain scaffolding:

"The rule is quite otherwise if the employer himself undertake to furnish such scaffolding for the men who are to work thereon. In such case the duty is one of those positive duties of the master toward the servant, which cannot be discharged by the substitution of a competent agent. The act or service to be done is that of furnishing a reasonably safe place or appliance, and negligence in the doing of such a service is the negligence of the master, without regard to the rank of different employés."

[3, 4] After examining the proofs, I am of the opinion that the case comes within the rule stated by Judge Lurton. The whole testimony taken together does not justify me in finding that the respondent is relieved from liability, for the reason that he purchased lumber of reputable dealers and sent into the hold of the steamship large quantities from which the workmen were to make selection, and that therefore the burden was left upon the workmen to see that proper material went into the braces. The evidence leads me to the conclusion that the respondent assumed the duty of selecting the material and performing the work, and that the lumber which went into the construction of the defective brace was selected by the foreman from a large pile containing similar sticks of timber, and was sent down by the foreman into the hold of the ship for use; that, instead of there being a large quantity sent down into the hold where this brace was made, there were sent into this hold only eight pieces of 4x6 timber, just enough to make the four braces required in this hold, and that those pieces were sent with the intent and expectation that they would be used; that in the general conduct of the business no effort was made by the foreman to have the man bringing the lumber from the wharf to the ship select pieces suitable for the special work to be done, but that they were told to take the lumber "just as it came from the pile"; that the lumber selected in this way was loaded by the workmen on trucks and wheeled down the wharf abreast of the hatch, where it was to be used; and that it was the custom of the foreman to stand by the hatch when the lumber was lowered into the hold. The answers to the formal interrogatories attached to the libel, and other testimony, leads me to believe that no inspection whatever was made of the lumber before it was sent down into the hold. The foreman testifies that, when this stock from which the brace was made was lowered into the hold, he was standing near the hatch; that he did not see anything happen in the hold which would break the stick, and he knew that it was the kind of lumber that breaks easily; it had large knots in it, which are indications that it would break easily; but that, in spite of all this, he did not make any inspection of it when it went into the hold. In cases where the master retains control of the work, gives directions in reference to the manner of doing it, and selects the material, the duty of inspection is imposed upon the mas-

ter; and if he attempts to delegate such duty to a fellow workman, the person so delegated becomes his vice principal, and the master is responsible for the negligent act of such vice principal as if the act were his own.

In Lafayette Bridge Company v. Olsen, 108 Fed. 335, 47 C. C. A. 367, 54 L. R. A. 33, the court held:

"A bridge company owes a positive duty to its employés engaged in building a steel bridge over a river, the materials and parts of which are supported by a temporary wooden structure during the work, to furnish timbers for such structure which are reasonably fit for the purpose, and to have the same inspected by a person having the requisite technical knowledge and experience to qualify him for the duty. Where, in such a case, no inspection was made, but the timbers and plank used were selected from a larger quantity by common workmen, by direction of the foreman in charge of the work, the company is liable for the death of a workman, caused by the breaking of a defective plank, which was required to support a heavy load, the unfitness of which would have been disclosed by a proper inspection by a competent person, but was not apparent to an unskilled man."

In speaking for the Circuit Court of Appeals, Seventh Circuit, Judge Jenkins said:

"If the duty of inspection was delegated to the foreman in charge of the work, it was not performed. He instructed common laborers to select the plank, and to pick out the best. Such selection, however, is not the inspection which duty to the servant required. The common laborer might form some judgment between two sticks of timber, and select the better one as they appeared to his uninformed and inexperienced mind; but he could not discover that which required for its ascertainment technical knowledge of woods and the ripened judgment of an expert. There is no evidence of inspection by principal or by vice principal; and, failing therein, the master is chargeable with knowledge of such defects as would have been ascertained by proper inspection by a competent person."

See Twomey v. Swift, 163 Mass. 273, 39 N. E. 1018; Arkerson v. Dennison, 117 Mass. 407; Northern Pacific R. R. Co. v. Herbert, 116 U. S. 642–643, 6 Sup. Ct. 590, 29 L. Ed. 755; Snow v. Housatonic R. R. Co., 8 Allen, 441, 85 Am. Dec. 720; Farrell, Adm'x, v. Eastern Machinery Co. 77 Conn. 484, 59 Atl. 611, 68 L. R. A. 239, 107 Am. St. Rep. 45.

[5] In the case at bar, the evidence leads me to believe that the timber used for the brace in question was unsuitable for the use intended for it, and that its unsuitability could have been discovered by a competent examination by an experienced man. This piece of timber was of short leaf Southern pine in a dozy condition, containing knots; and it is shown by expert witnesses that lumber of this character is brittle and liable to break when exposed to a sudden jar, such as being thrown off a wagon. Counsel have brought before me a case which is of interest, as bearing on the facts, if not upon the law, of the case before me. In Danner v. Wells, Appellant, 248 Pa. 105, 93 Atl. 871, Mr. Justice Frazer, speaking for the court, referred to the use of unsuitable timber in the construction of a scaffold which formed the subject of contention. He said:

"Each witness of plaintiff, who was questioned regarding the use of 'short leaf' or 'bull' pine, said such material was unsuitable for scaffolding purposes under the circumstances of this case, and was referred to by the witnesses as

[being] the 'cheapest grade of lumber,' 'bad timber,' and that short leaf pine was used because 'we did not have any long leaf.' "

[6] In the case before me, the foreman testifies that he did not know any difference between short leaf pine and long leaf pine, and that he ordered the lumber to be taken from the pile "just as it came," and that he "sent down into the hold, for the men to work with, any piece of the lumber that Mr. Swett orders onto the wharf." The testimony does not induce the belief that the foreman had sufficient knowledge of lumber, and sufficient appreciation of his duty, to be intrusted with the labor and life of men committed to his charge. The libelant had no reason to rely upon his own knowledge of the strength of the timber. He had no such knowledge; his fellow workmen in the hold had no such knowledge. Whether or not they made any examination of the timber put into the braces made by them is, at law, of no consequence, under the state of facts in this case. The respondent having furnished the lumber for the braces, the libelant was justified in assuming that it was reasonably safe and suitable, and had been properly inspected. Nor is it important to inquire whether or not the fellow servants of the plaintiff were negligent (American Shipbuilding Co. v. Lorenski, 204 Fed. 39–44, 122 C. C. A. 353, supra; Felton v. Harleson, 104 Fed. 737, 44 C. C. A. 188), for the testimony is convincing that the injury was caused by the negligence of the respondent.

The whole testimony, taken together, leads to the inevitable conclusion that the respondent failed in his duty to select proper material for the timber used by his servants in making the brace in question, and that he also failed in his duty to inspect such timber as he furnished before it went into the hold for use in making the brace, and that the injury to the libelant resulted from such negligence.

[7] Was the libelant also at fault? From his testimony, he was sitting 3½ or 4 feet from the in-board end of the brace. He had just finished securing the in-board end of the brace, and cleating it. He says that, after he got through putting in the cleats around the nose of the brace, he started to put his hatchet in his belt; that he was going to descend down to the skin of the ship; that he was intending to lower himself from the top brace to the second brace, and from the second brace to the ship. He adds that this was the customary way of getting down. He says he had worked out on the brace, "no more than a foot," "just enough to turn around," and that he had just pushed himself out, in the act of turning around, when the brace broke, and that his intention was to go down by reaching his hands up and steadying himself by the upper brace, and thus proceeding down, with his feet on the lower brace. There is some evidence that this was the way others had been accustomed to go down. If the libelant had waited a short time, he could have made use of a ship's ladder somewhere about the premises, and there were other ways by which he could have descended. There is some evidence tending to show that a warning or reminder was given to him by the foreman, in reference to the unsafety of going down in the way he did. He says he did not hear anything of this kind. It is not important whether

he did or not. The whole situation was as apparent to him as to anybody.

At the hearing of the cause I was inclined to think the question of the negligence of the libelant a close question. Upon examining carefully all the testimony relating to this question, I cannot say that it is proved by a preponderance of evidence that the libelant was guilty of contributory negligence in attempting to go down the brace as he did. I think it my duty to give the libelant the benefit of whatever doubt the testimony may raise. It is quite clear, also, that there was no negligence on his part, as charged by the respondent, in failing to make any inspection of the lumber used in construction, or in any other matter brought to my attention.

It is urged by the libelant that the question of contributory negligence of the libelant is not properly brought before the court by the pleadings; but I prefer to treat it as though an amendment had been seasonably filed and the matter brought formally before me.

I conclude, therefore, that the respondent was negligent as charged in the libel, and that the libelant was injured by reason of the respondent's fault; that he was not guilty of contributory negligence, and was not at fault.

A decree may be entered for the libelant.

The libelant recovers costs.